**HUMBLE OIL & REFINING COMPANY, Plaintiff,**

v.

**STANDARD OIL COMPANY (KENTUCKY), Defendant.**

**Civ. A. No. 3137.**

United States District Court
S. D. Mississippi,
Jackson Division.
March 13, 1964.

Leslie D. Taggart, Nicholas John Stathis, Ronald O. Thomas and Christopher J. Aeschlimann of Watson, Leavenworth, Kelton & Taggart, New York City, Forrest M. Darrough and Dillard W. Baker, Houston, Tex., F. X. Clair, New York City, Joe A. Thompson, Jackson, Miss., George F. Woodliff, of Heidelberg, Woodliff & Franks, Jackson, Miss., M. M. Roberts, Hattiesburg, Miss., for plaintiff.

Beverly W. Pattishall and W. Thomas Hofstetter, of Woodson, Pattishall & Garner, Chicago, Ill., F. R. Kirkham, James B. Atkin and Harlan M. Richter, of Pillsbury, Madison & Sutro, San Francisco, Cal., Dana Brown, Louisville, Ky., William E. Suddath, Jr., of Watkins & Eager, Jackson, Miss., Robert W. Thompson, Jr., of Mize, Thompson & Mize, Gulfport, Miss., for defendant.

MIZE, District Judge.

This lawsuit involves a controversy between the plaintiff, Humble Oil & Refining Company, hereinafter referred to as Humble, and Standard Oil Company of Kentucky, hereinafter referred to as Kentucky and grows out of a contract between the two, entered into on the 27th day of January, 1955, involving the right to use the trade name ESSO. Involved also are two other contracts.

The first contract was executed on March 24, 1934 between Penola, Inc., plaintiff's predecessor, and defendant, and by its terms appointed defendant the sole distributor in the 5-state area here involved of ESSO marine lubricants and other petroleum products supplied by or under authority of plaintiff's predecessor. This contract is an exhibit to the amended complaint.

The second contract, an exhibit to the amended complaint, was executed on September 15, 1938 and was between Standard Oil Company of New Jersey, the plaintiff's predecessor, and the defendant, Kentucky, by which Kentucky was granted the privilege of using the trade mark ESSOTANE in the 5-state area here involved.

The 5-state area here involved consists of the states of Alabama, Georgia, Florida, Kentucky and Mississippi.

The last contract, and the controlling contract, was executed on the 27th of January 1955 between Esso Standard Oil Company, a Delaware corporation, plaintiff's predecessor, and the Standard Oil Company of Kentucky, the defendant herein, and is set out hereinbelow first. In order to reach a correct solution of the problem involved it is necessary to consider each and every sentence and paragraph of the contracts, and for that reason they are set out verbatim.

"TRADEMARK
LICENSE AGREEMENT

This Agreement made this 27th day of January, 1955 by and between ESSO STANDARD OIL COMPANY (hereinafter called ESSO STANDARD), a Dela-

ware corporation having an office at 15 West 51st Street, in the City and State of New York; and

STANDARD OIL COMPANY (KENTUCKY) (hereinafter called KENTUCKY), a Kentucky corporation having an office in the Starks Building, City of Louisville, State of Kentucky:

WITNESSETH:

Whereas ESSO STANDARD is the owner of the trade marks listed in the attached 'Schedule of Esso Standard Trade Marks' together with the good-will of the business appertaining thereto; and

Whereas, KENTUCKY for many years has marketed products purchased from ESSO STANDARD in Alabama, Florida, Georgia, Kentucky and Mississippi under these Esso Standard trade marks without giving rise to any confusion with KENTUCKY's trade marks which during the same period have been actively used by KENTUCKY in the same states; and

Whereas, it is now desired by ESSO STANDARD and KENTUCKY to set forth specifically the terms and conditions governing KENTUCKY's use of these Esso Standard trade marks or any other Esso Standard trade marks used hereafter by KENTUCKY in connection with products supplied by or on behalf of ESSO STANDARD:

ESSO STANDARD and KENTUCKY agree as follows:

(1) KENTUCKY recognizes ESSO STANDARD's ownership of and the exclusive right to the use of these Esso Standard trade marks in the States of Alabama, Florida, Georgia, Kentucky and Mississippi. KENTUCKY recognizes also the validity of the registrations of these Esso Standard trade marks at the U. S. Patent Office and in the States named above. KENTUCKY agrees that neither while this agreement is in force nor at any time thereafter will it claim any right, title or interest in or to any of these Esso Standard trade marks.

Advertising or other representations by KENTUCKY referring to these Esso Standard trade marks, products or otherwise shall be conducted and made in such manner as will not impair or endanger ESSO STANDARD's ownership of or right to use these trade marks in Alabama, Florida, Georgia, Kentucky and Mississippi or the validity of its trade mark registrations during or after the termination of this agreement.

(2) KENTUCKY agrees to cooperate with ESSO STANDARD in the protection of these Esso Standard trade marks in the States referred to by promptly informing ESSO STANDARD of any encroachments or misuses of these Esso Standard trade marks which come to KENTUCKY's attention and KENTYCKY agrees also to notify ESSO STANDARD promptly of any pending or threatened litigation involving the trade marks. Any litigation involving these Esso Standard trade marks shall be at the expense of and under the complete control of ESSO STANDARD.

(3) ESSO STANDARD shall furnish KENTUCKY current information and instructions regarding the labeling, marking, package designs and color schemes to be used by KENTUCKY in the sale of products under these Esso Standard trade marks, including instructions regarding trade mark registration notices where considered necessary by ESSO STANDARD. During or after the life of this agreement, KENTUCKY will not sell or offer for sale products under trade marks, labels, markings or package designs, confusingly similar to any of these Esso Standard trade marks, labels, markings or package designs used by KENTUCKY under the terms of this agreement.

(4) KENTUCKY agrees to take all reasonable steps to insure that all products supplied to it in bulk for resale under these Esso Standard trade marks, labels and markings are not in any way contaminated or adulterated and that all packaged products sold by KENTUCKY under these Esso Standard trade marks are of the same quality as the bulk products supplied by ESSO STANDARD or comply with ESSO STANDARD's specifications for products bearing the par-

ticular ESSO STANDARD brand. ESSO STANDARD or its designated inspector shall have the right to inspect KENTUCKY's plants and methods of packaging and draw samples at stations, bulk plants or otherwise where products to be sold under these Esso Standard trade marks are being filled into containers by KENTUCKY or its representatives to insure that the quality of the branded products are maintained throughout the packaging operation and to verify that the labeling and packaging is in accordance with the program adopted or approved by ESSO STANDARD.

(5) KENTUCKY agrees that whenever any of these Esso Standard trade marks are used by KENTUCKY in advertising copy or promotional material the status of the brand as a registered trade mark of the manufacturer shall be indicated. This shall be done by use of the statutory trade mark registration notice—'®'.

(6) No products shall be sold by KENTUCKY under these Esso Standard trade marks, labels or markings unless such products shall have been supplied by ESSO STANDARD or under its authorization.

(7) The permission to KENTUCKY to use these Esso Standard trade marks, labels and markings herein granted is personal to KENTUCKY and shall not be transferable, assignable or inure to the benefit of any successor or assignee of KENTUCKY without the written consent of ESSO STANDARD first had and obtained.

(8) This agreement shall be subject to cancellation at any time by either party giving to the other not less than ninety (90) days' written notice in advance.

(9) Upon the termination or cancellation of this agreement, KENTUCKY agrees to discontinue promptly all use of these Esso Standard trade marks and KENTUCKY agrees also that any and all rights to the use of these trade marks as authorized by this agreement shall upon the termination or cancellation of the agreement revert to ESSO STANDARD.

(10) Nothing contained herein shall be construed to limit or restrict the right of KENTUCKY to sell petroleum or other products under trade marks, labels and markings not confusingly similar to these Esso Standard trade marks, labels and markings.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed by their duly authorized officers the day and year first above written.

ESSO STANDARD OIL COMPANY

By _____ R. H. SCHOLL _____

R. H. SCHOLL VICE PRESIDENT

STANDARD OIL COMPANY (KENTUCKY)

By _____ W. G. VIOLETTE _____ "

– O –

Schedule of 'Esso Standard Trade Marks

| Trade Mark | U. S. Pat. Off. Reg. No. | Goods |
| --- | --- | --- |
| ACTO | 550,625 | Petroleum Sulfonates |
| ACTOL | 198,782 | Motor Oil |
| ANDOK | 310,097 | Lubricating Grease |
| ARACAR | 303,931 | Lubricating Oil |
| ARAPEN | 324,745 | Lubricating Grease |
| AROX | 315,950 | Lubricating Oil |
| BAROSA | 340,393 | " " |
| BASEKOTE | 514,173 | " Grease |

| Trade Mark | U. S. Pat. Off. Reg. No. | Goods |
|---|---|---|
| BAYOL | 320,815 | White Oil |
| BAYOL | 320,899 | " |
| BAYOL | 322,111 | " |
| BEACON | 114,684 | Lubricating Grease |
| BEACON | 232,598 | " " |
| BRYMUL | 315,952 | " " |
| CALORIA | 88,392 | " Oil |
| CAMBAR | 315,953 | " Grease |
| CANTHUS | 162,379 | " Oil |
| CANTONA | 305,427 | " " |
| CARUM | 176,079 | Lubricating Grease |
| CASTAN | 162,371 | " Oil |
| CAZAR | 315,585 | " Grease |
| COBLAX | 305,426 | " Oil |
| CORAY | 307,884 | " Oil |
| CYLANTO | 305,423 | " " |
| CYLESSO | 305,424 | " " |
| CYLMAR | 305,437 | " " |
| CYLOTTE | 305,422 | " " |
| DIOL | 235,482 | " " |
| DORTAN | 318,951 | Cutting Oil |
| DRAW-EX | 187,284 | Lubricating Grease |
| DRUID | 162,378 | Lubricating Oil |
| ELCMA | 315,954 | Rust Preventive and Protective Coating |
| EPIC | 314,675 | Lubricating Grease |
| ESSO | 176,408 | Lubricating Oil / Motor Oil |
| ESSO EXTRA | . | Aviation Oil / Turbine Oil |
| ESSOFLEET | Not Registered | Motor Oil |
| ESSOLUBE | 285,285 | Motor Oil |
| ESSOTEX | 323,839 | Textile Treating Oils and Textile Machine Lubricant |
| | 324,244 | |
| ESSTIC | 305,436 | Lubricating Oil |
| ESTAN | 315,502 | Lubricating Grease |
| FANOX | 162,375 | Lubricating (Cutting Oil) |
| FEBIS | 162,374 | " " " |
| FRACTOL | 149,248 | Refrigeration Oil |
| FYBROLEUM | 315,567 | Lubricating Grease |
| KUBOLA | 315,470 | " " |
| KUTWELL | 235,449 | Cutting Oil |
| | 520,206 | " " |
| LADEX | 316,087 | Lubricating Grease |
| LUSTAN | 356,944 | Lubricating Oil |
| MARCOL | 161,305 | White Oil |
| | 235,373 | " " |
| | 235,645 | " " |
| | 261,793 | " " |

| Trade Mark | U. S. Pat. Off. Reg. No. | Goods |
|---|---|---|
| MENTOR | 307,850 | Lubricating Oil |
| MILL COT | 190,978 | " " |
| MORNOP | 316,088 | " Grease |
| MUNTAN | 316,089 | " " |
| NATOR | 316,663 | Lubricating Oil |
| NORVA | 307,883 | Lubricating Grease |
| NUSO | 162,896 | Lubricating Oil and |
| | 187,777 | Ink Reducer |
| NUTO | 307,887 | Lubricating Oil |
| OBRA | 315,547 | " Grease |
| PALUBCO | 87,796 | Lubricating Grease and |
| | 350,607 | Paints and Paint Oil |
| PEETAL | 315,548 | Lubricating Grease |
| PENNEX | 223,202 | Cutting Oil |
| PENOLA | 162,576 | Lubricating Grease |
| PEN-O-LED | 367,419 | " " |
| PRIMOL | 250,426 | Heavy White Oil |
| | 252,537 | " " " |
| ROXTONE | 162,380 | Lubricating Oil |
| RUST-BAN | 290,218 | Rust Preventives and |
| | 359,310 | Protective Coatings |
| | 360,803 | |
| | 360,804 | |
| | 364,370 | |
| SEALOL | 168,137 | Refrig. Oil |
| | 444,206 | " " |
| SOLNEK | 316,093 | Lubricating Grease |
| SOLVESSO | 318,870 | Solvents |
| | 318,875 | |
| | 324,419 | |
| SPINESSO | 325,863 | Lubricating Oil |
| TFLURA | 307,885 | " " |
| TERESSO | 305,438 | " " |
| TERVAN | 378,570 | Wax |
| THREDKOTE | | Lubricating Grease |
| UNIFLO | 312,296 | Motor Oil |
| UNIVIS | 162,372 | Lubricating Oil and Hydraulic Medium |
| UNIVOLT | 319,614 | Transformer Oil |
| VAN CALORIA | | Lubricating Oil |
| VAN DRUID | | " Grease |
| VAN ESTAN | | " Grease |
| VAN TALGAR | 359,979 | " " |
| VARSOL | 244,001 | Solvents |
| | 250,562 | " |
| | 250,866 | " |
| VELNER | 317,421 | Lubricating Grease |
| WYROL | 150,122 | White Oil |
| | 154,393 | |

| Trade Mark | U. S. Pat. Off. Reg. No. | Goods |
|---|---|---|
| BARS AND CIRCLE DESIGN | 194,116 | Lubricating Oils and Greases |
| ESSO OVAL | 347,466 | " " " " |
| ESSO OVAL (in colors) | 347,467 | " " " " |
| FAXAM | 162,373 | Lubricating Oils |
| NECTON | 310,082 | " " |
| VALESSO | 305,428 | " " |
| ALERT | 315,949 | Lubricating Greases |
| CASTROLEUM | 174,898 | " " |
| COMAL | 335,189 | " " |
| ESSOROD | 325,486 | Lubricating Greases |
| FIRMAX | 305,425 | " " |
| NAKTA | 315,546 | " " |
| NEBULA | 316,090 | " " |
| SURETT / VAN SURETT | 316,094 | " " |
| VAN PEETAL | Covered by No. 315,548 | " " |
| TOCAR | 315,485 | " " |
| PARMO | 153,870 | Petrolatums |
| OYLO-MAR | 316,668 | Marine Oils |
| ESSO-MAR | 307,919 | " " |
| MARINEX | 316,100 | " " |
| MARMAX | 307,849 | " " |
| STER-MAR | Applied for | " " |
| TELO-MAR | 316,101 | " " |
| TEROLA | 316,098 | " " |
| TRO-MAR | 538,259 | " " |
| ZERO-MAR | 316,099 | " " |
| MAROLEUM | 319,621 | Marine Grease |

The first contract was dated March 24, 1934 and reads as follows:

"AGREEMENT, made in duplicate, this 24th day of March, 1934, between PENOLA INC., a Delaware corporation, of Pittsburgh, Pennsylvania, hereinafter called 'PENOLA', and STANDARD OIL COMPANY (KENTUCKY), a Kentucky corporation, of Louisville, Kentucky, hereinafter called 'KENTUCKY',

WITNESSETH:

WHEREAS, PENOLA owns the ESSOMARINE trademarks shown on the attached schedule 'A' which is hereby made a part hereof together with the business and good will pertaining thereto; and

WHEREAS, KENTUCKY maintains a marketing organization and markets marine lubricants and other petroleum products in the States of Kentucky, Alabama, Florida, Georgia and Mississippi; and

WHEREAS, PENOLA proposes to establish and maintain such formulae and specifications, tests, processes and requirements as may be necessary to insure sale over as wide a territory as practicable under said ESSOMARINE trade-

marks of products of uniformly high quality especially suitable for marine purposes, and to require said products sold under said ESSOMARINE trademarks everywhere to conform to said formulae and specifications, tests, processes and requirements: and

WHEREAS, ESSOMARINE products as used herein refers to products sold by PENOLA under ESSOMARINE trademarks, which products are designed especially for marine purposes: and

WHEREAS, PENOLA and KENTUCKY wish to cooperate for the purpose of making said products available in said States under the ESSOMARINE trademarks to all who may require them,

NOW, THEREFORE, in consideration of the premises and of the mutualities hereof, it is agreed as follows:

1. PENOLA hereby appoints KENTUCKY sole distributor for the States of Kentucky, Alabama, Florida, Georgia and Mississippi during the term hereof, of said ESSOMARINE products, and KENTUCKY accepts such appointment and agrees to act as such sole distributor upon the specific understanding that PENOLA is and shall continue to be the owner in said States of any and all right, title and interest in and to said ESSOMARINE trademarks, and that KENTUCKY will claim no right, title or interest in or to any of the same either during the life of or after the termination of this agreement, and will not use said ESSOMARINE trademarks upon any except said ESSOMARINE products conforming to PENOLA'S said specifications and will not buy such products from other sources except with PENOLA'S specific approval. KENTUCKY agrees to cooperate with PENOLA in maintaining and protecting said trademarks and PENOLA'S ownership thereof.

2. PENOLA will not authorize any other distributor to sell said products or any of them in said States during the term hereof without written consent of KENTUCKY.

3. In connection with said appointment PENOLA hereby agrees to sell and deliver to KENTUCKY, and KENTUCKY agrees to purchase and receive from PENOLA said products delivered on board cars or other means of transportation at such points of origin as PENOLA may elect, it being understood that title to said products shall pass to KENTUCKY at that time and place and all risk and responsibility thereafter shall be in KENTUCKY. A list of said shipping points with the prices for each product delivered at such points, are listed in Schedule 'B' attached hereto and made a part hereof.

It is understood that the prices which KENTUCKY shall pay PENOLA are subject to change by PENOLA from time to time.

4. ~~When delivery of said products is made in carload lots KENTUCKY shall make payment therefor within thirty (30) days from date of shipment and when delivery is made in less than carload lots~~ Payment shall be made within thirty days from date of shipment. ~~on or before the fifteenth day of the month following that in which delivery is made.~~ (GHT)

5. It is agreed that any duty, tax or other charge PENOLA or other supplier designated by PENOLA may be required by any Federal, State, municipal or other law now in effect or hereafter enacted, to collect or pay with respect to the sale, delivery and/or use of the commodities covered hereby will be added to the prices provided for herein and be paid by Kentucky.

6. Said products shall always be sold under said ESSOMARINE trademarks and the containers and labels shall be as nearly uniform everywhere as conditions permit, PENOLA keeping KENTUCKY informed from time to time of any changes.

7. All orders shall be filled with reasonable promptness except that in case of fire, riots, strikes or accidents or other conditions whether or not similar in character to those specifically named, which unavoidably stop the making of

deliveries, deliveries contracted for may be cancelled or partially cancelled as the case may require upon written or telegraphic notice to KENTUCKY. Such interruption of deliveries however, shall not invalidate the remainder of this agreement but upon removal of the cause of the interruption deliveries shall be continued as before.

8. KENTUCKY agrees to carry continuously and have readily available, reasonable ~~sufficient~~ quantities of said products, to enable it to meet promptly current demands of the trade in said States, and to make every reasonable effort and use proper means to develop as far as practicable the trade where in said products both wholesale and retail.

9. ~~To enable PENOLA to be informed of the situation in said States KENTUCKY agrees to furnish PENOLA at such times as PENOLA may request, not oftener than monthly, reports showing the quantity of each size of each product which has been sold during the preceding month or since the previous report.~~

10. PENOLA will conduct such national publicity as it may deem fit and bear all expense therefrom. ~~it being understood, however, that KENTUCKY, in making every reasonable effort and using all proper means to develop trade in said products, will conduct appropriate local publicity and advertising at its own expense.~~

11. KENTUCKY will pay or assume all expenses connected with the sale and distribution of said products to the trade and to the public generally in said States.

12. In the event any Federal, State or Municipal government or anyone holding authority therefrom or anyone holding authority under the National Industrial Recovery Act or any approved code applicable to the oil industry fixes prices for products on which prices are quoted herein, which fixed prices shall be an increase of the prices quoted herein, it will be necessary to abide by such stipulations and obey the law. If any such Federal or State government shall fix the price or value of any crude oil or whatever material is used in the production of the commodities deliverable hereunder at higher prices than those now prevailing, or shall restrict the hours of labor at less or fix the wages to be paid therefor at more than were prevailing on the date of this agreement, prices provided or permitted herein shall be increased by the amount of the resulting increased cost to PENOLA and those furnishing it with commodities sold hereunder, or with material from which such commodities are manufactured. If any such government or state authority shall establish conditions of delivery different from those provided hereunder then appropriate changes shall be made in the conditions of delivery specified hereunder. Appropriate changes shall be made in the prices specified or permitted hereunder to compensate PENOLA for any increased cost of such new conditions of delivery. If such Federal government or State authority fixes prices, costs or conditions of delivery as contemplated hereunder, and thereafter refixes them at other levels or under other conditions, then the prices and conditions hereunder shall be again changed to conform thereto.

In the event of the depreciation of the currency of the United States by inflation, reduction of the gold content of the dollar, issuance of fiat money, extension of credit or otherwise, the prices provided or permitted hereunder may at PENOLA'S option be increased proportionately to the depreciation of the currency and/or the increase of PENOLA'S cost respectively. Naturally, in the event of difference of opinion regarding the application or effect of the previous provisions, or in the event of any increase in PENOLA'S price to KENTUCKY resulting therefrom KENTUCKY may terminate this agreement on fifteen (15) days' written notice.

13. This agreement shall be for a term of five (5) years from the date hereof and continue from year to year thereafter until either of the parties shall give six (6) months' written notice to the other prior to the end of any

such term that this agreement shall not be renewed.

14. In case either one of the parties hereto fails to carry out any conditions of this agreement the other party reserves the right to cancel the same after due demand in writing addressed to the first party. If at the end of thirty (30) days from the date of the receipt of such demand, or the date when said demand should be received in the normal course of the mails, the party violating the agreement has not complied with the demand the agreement shall immediately end. The above formalities duly carried out shall ipso facto cancel the agreement without the necessity of any other steps being taken.

15. In case either party wishes to terminate this agreement for other than violations thereof it may do so by serving six (6) months notice in writing upon the other party of the intention to terminate; such notice to specify the reason therefor. If the specified reason for such intention to terminate shall be removed, in the judgment of PENOLA, and KENTUCKY, before the expiration of the period of said notice, said termination shall not become effective and the notice shall be withdrawn; but if the reason for intention to terminate is not so removed such termination shall become effective upon the expiration of the period of said notice and this agreement terminate ipso facto without further action by either party.

16. It is further understood and agreed that even though this agreement is terminated pursuant to either of said two preceding paragraphs KENTUCKY'S obligation to pay in full for all products delivered hereunder to KENTUCKY in accordance with KENTUCKY'S directions shall not be affected.

17. Upon the expiration or termination of this agreement KENTUCKY shall have no further rights to the use of ESSOMARINE trademarks and shall make no claim thereto or against the use thereof in said States by PENOLA or other duly authorized distributors of said ESSOMARINE products.

18. This agreement shall not be assigned or transferred by KENTUCKY directly or indirectly without the written consent of PENOLA. Upon KENTUCKY'S selling, leasing or otherwise disposing of or merging or consolidating with another this agreement, if PENOLA so elects, shall immediately terminate and PENOLA shall not be under any obligation to deliver to KENTUCKY further quantities of the products herein agreed to be sold and delivered to KENTUCKY.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be duly executed the day and year first above written.

PENOLA INC.
C. C. LUCAZETTE
By ————————————
President

STANDARD OIL COMPANY (KENTUCKY)
W. E. SMITH
By ————————————
President

Attest:
M. H. RAINES
————————————
Secretary

Attest:
THOS. C. M. GOODWIN
————————————
Secretary"

The Agreement dated September 15, 1938 reads as follows:

## "AGREEMENT

1. The STANDARD OIL COMPANY OF NEW JERSEY, a Delaware Corporation, with offices at 26 Broadway, New York, New York (hereinafter called JERSEY), hereby grants to STANDARD OIL COMPANY (KENTUCKY), a Kentucky corporation with offices at Louisville, Kentucky (hereinafter called KENTUCKY), the privilege of using in marketing and advertising the trade mark or brand name ESSOTANE (registered

by JERSEY in the United States Patent Office under No. 331,486 dated January 7, 1936) in the territory wherein KENTUCKY now markets petroleum products, in connection with the sale of ESSOTANE (commercial propane) purchased by KENTUCKY from JERSEY and from those authorized by JERSEY to sell ESSOTANE.

2. KENTUCKY agrees that it will use said brand ESSOTANE only in connection with the sale of ESSOTANE (commercial propane) purchased from JERSEY or from those authorized by JERSEY to sell ESSOTANE.

3. KENTUCKY agrees that it will make no claim to the right to use said brand ESSOTANE except in connection with the sale of ESSOTANE (commercial propane) purchased as aforesaid.

4. KENTUCKY agrees that it will make no objection to the use by JERSEY or those authorized by JERSEY to sell ESSOTANE, or their customers, of said brand ESSOTANE in connection with their sale of ESSOTANE (commercial propane).

5. KENTUCKY agrees that the privilege above granted to KENTUCKY by JERSEY to use said brand ESSOTANE shall be withdrawn by JERSEY whenever and to the extent that KENTUCKY discontinues sales of ESSOTANE (commercial propane) purchased as aforesaid by KENTUCKY.

6. KENTUCKY agrees that it will promptly discontinue use of said brand ESSOTANE whenever and to the extent that KENTUCKY discontinues sales of ESSOTANE (commercial propane) purchased as aforesaid by KENTUCKY.

7. KENTUCKY shall not permit its sub-distributors or customers to market or advertise said ESSOTANE for sale, or authorize or permit others to whom they sell to market or advertise ESSOTANE in any territory other than within that hereinabove referred to. KENTYCKY agrees that after receipt of said ESSOTANE in tank cars or otherwise, KENTUCKY shall place or cause to be placed said ESSOTANE in appropriate cylinders for sale to the trade, KENTUCKY providing, or causing to be provided, said cylinders at its own expense, but the type and quality of cylinders are to meet specifications prescribed by the Interstate Commerce Commission. Said product ESSOTANE (commercial propane) shall be sold under said trade mark or brand ESSOTANE, and the labels on the cylinders containing said ESSOTANE shall show said trade mark or brand ESSOTANE by stencilling, painting or otherwise marking, the word ESSOTANE on each and every one of the cylinders.

8. KENTUCKY agrees, and agrees to require its sub-distributors to agree, not to claim any right, title or interest in or to said trade mark ESSOTANE, the labels, trade marks, and designs, or any of them, pertaining to said trade mark and product, during the life of or after the termination of this agreement.

KENTUCKY agrees, and agrees to require its sub-distributors of ESSOTANE to agree, to discontinue the use in any manner of said trade mark, legends, labels and designs upon the expiration or earlier termination of this agreement, or in the case of the sub-distributors to discontinue such use upon the termination of KENTUCKY'S agreement with sub-distributors. KENTUCKY shall include in its agreements with each of its sub-distributors the right to repurchase from each of such sub-distributors stock of ESSOTANE remaining on hand with the sub-distributor at the time of the termination of the sub-distributor's agreement, the price to be paid by KENTUCKY for any such re-purchased stock of ESSOTANE to be the price previously paid KENTUCKY by its sub-distributor.

9. The ESSOTANE (commercial propane) to be delivered hereinunder shall at least equal the current specifications for commercial propane.

10. This agreement shall continue for a period of five years from the date hereof with the understanding that it shall continue thereafter for periods of one year each, unless and until terminated by either party giving the other party six

months notice in writing of such termination; it being understood that there shall be no termination within the first five-year period, except as otherwise provided herein. In the event of violation of any of the provisions hereof by one party, the other party may terminate this agreement upon thirty days written notice with the understanding, however, that if the violation or other failure causing the notice of termination shall have been cured prior to the expiration of said thirty day period, such notice of termination shall not become effective.

11. This agreement is not assignable or transferable directly or indirectly without the written consents of both JERSEY and KENTUCKY.

In witness whereof, the parties hereto have caused these presents to be executed this 15th day of September, 1938.

(SEAL) STANDARD OIL COMPANY OF NEW JERSEY
By E. A. HOLBEIN (C.D.P.)
Vice President (G.H.T.)

(SEAL) STANDARD OIL COMPANY (KENTUCKY)
By W. G. VIOLETTE
Vice President

ATTEST:
W. F. QUICK
Asst. Secretary

ATTEST:
DAVID F. COCKS
Secretary"

– O –

The pleadings consist of the original complaint, the amended complaint, the answer of the defendant and counterclaim of the defendant and the answer of the counter defendant to the counter complaint, and in order to grasp all the issues, they can be stated best by quoting in full, omitting the formal parts, the above pleadings, as they bring into view the entire picture in so far as issues are concerned:

## "COMPLAINT

1. Plaintiff is a Delaware corporation and has its principal office and place of business at No. 1216 Main Street, Houston, Texas.

2. Plaintiff is informed and believes and therefore avers that defendant is a Kentucky corporation and has an office and place of business and does business at No. 200 North State Street, Jackson, Mississippi, in the Southern District of Mississippi, Jackson Division.

3. This action is brought under the Federal Declaratory Judgment[s] Act, 28 U.S.C. Sections 2201 and 2202, for a declaration and judgment as to plaintiff's rights in an actual controversy between plaintiff and defendant within this Court's jurisdiction. The jurisdiction of this Court rests upon the ground that this is a civil action arising between citizens of different states wherein the amount in controversy exceeds the sum or value of ten thousand dollars ($10,-000.), exclusive of interest and costs, and also upon the ground that this civil action arises under the trademark laws of the United States, viz., the Trade-Mark Act of July 5, 1946, 60 Stat. 427, 15 U.S.C. Section 1051 et seq., and under the Judicial Code, 28 U.S.C. Section 1338.

4. Since long prior to any of the acts of defendant complained of in this complaint, plaintiff (which term includes its predecessors) has been and now is manufacturing, and has been and now is selling various petroleum products in interstate commerce including sales into the States of Mississippi, Alabama, Florida, Georgia and Kentucky.

5. Since long prior to any of the acts of defendant complained of in this complaint, plaintiff has been continuously and now is using its trademark ESSO and other trademarks which include ESSO on or in connection with the sale, offering for sale and advertising of such products.

6. From the time of the introduction on the market of the said products bearing the trademark ESSO and bearing other trademarks which include ESSO, said products of plaintiff have become and now are widely known and recognized in Mississippi and elsewhere by the

trademark ESSO and by other trademarks which include ESSO which trademarks are closely and universally associated with plaintiff and its said products and by which plaintiff's said products are known to the public and by which their source and origin are identified.

7. Plaintiff is the owner of the following United States trademark registrations, among others, which were duly issued by the United States Patent Office and which are presently outstanding, validly subsisting and uncancelled:

| Trademark | Registration No. | Date Issued |
| --- | --- | --- |
| ESSO | 176,408 | November 27, 1923 |
| ESSOLUBE | 285,285 | July 21, 1931 |
| ESSOMARINE | 307,919 | November 14, 1933 |
| ESSO-MAR | 316,711 | September 4, 1934 |
| ESSOTEX | 323,839 | May 7, 1935 |
| ESSOTEX | 324,244 | May 14, 1935 |
| ESSOROD | 325,486 | June 25, 1935 |
| ESSOTANE | 331,486 | January 7, 1936 |
| ESSO in Oval | 347,466 | June 29, 1937 |
| ESSO in Oval | 347,467 | June 29, 1937 |

8. Plaintiff is the owner of the following registrations which were duly issued by the Department of State of the state of Mississippi and which are presently outstanding, validly subsisting and uncancelled:

| Trademark | Registration No. | Date Issued |
| --- | --- | --- |
| ESSO | None | July 1, 1938 |
| ESSO in Oval | None | July 1, 1938 |
| ESSOLENE | None | July 1, 1938 |
| ESSOLUBE | None | July 1, 1938 |
| ESSOTANE | None | July 1, 1938 |
| OVAL E | R-39 | March 11, 1946 |

9. Under date of March 24, 1934, Penola, Inc., a predecessor of plaintiff, and defendant, entered into an agreement in writing wherein Penola Inc. appointed defendant and defendant agreed to act as distributor in the States of Mississippi, Alabama, Florida, Georgia and Kentucky, of products purchased by defendant from Penola Inc., and sold by defendant under Penola Inc.'s trademarks, including ESSOMARINE. In the said agreement, defendant agreed that Penola Inc. was and would continue to be the owner in the said states of any and all right, title and interest in and to the said trademarks, and that defendant would claim no right, title or interest in or to any of the said trademarks either during the life or of after the termination of the said agreement.

10. Under date of September 15, 1938, Standard Oil Company of New Jersey, a predecessor of plaintiff, and defendant, entered into an agreement in writing wherein defendant was granted the privilege of using the trademark ESSOTANE in connection with commercial propane purchased by defendant from said Standard Oil Company of New Jersey and sold by defendant in the States of Mississippi, Alabama, Florida, Georgia and Kentucky. In the said agreement, defendant agreed that it would make no objection to the use by said Standard Oil Company of New Jersey or those authorized by said Standard Oil Com-

pany of New Jersey to sell commercial propane under the trade mark ESSOTANE or their customers, of the said trademark ESSOTANE in connection with their sale of commercial propane, and defendant further agreed not to claim any right, title or interest in or to the said trademark ESSOTANE either during the life of or after the termination of the said agreement.

11. Under date of January 27, 1955, Esso Standard Oil Company, a predecessor of plaintiff, and defendant, entered into an agreement in writing wherein defendant was granted permission to use the trademark ESSO and other trademarks which include ESSO in connection with products supplied to defendant by said Esso Standard Oil Company and sold by defendant in the States of Mississippi, Alabama, Florida, Georgia and Kentucky. In the said agreement, defendant recognized said Esso Standard Oil Company's ownership of and exclusive right to the use of the trademark ESSO and the other trademarks which include ESSO in the said states and agreed that neither while the said agreement was in force nor at any time thereafter would it claim any right, title or interest in or to any of the said trademarks of said Esso Standard Oil Company.

12. Plaintiff is informed and believes and therefore avers that the agreements of March 24, 1934, September 15, 1938 and January 27, 1955, which are referred to in Paragraphs 9, 10 and 11 above, are now in full force and effect, and plaintiff, by virtue of merger or assignment or both, is now the contracting party with defendant with its consent in each of the said agreements. By virtue of the said agreements, defendant has recognized plaintiff's ownership of and exclusive right to the use of the trademark ESSO, either alone or in combination with other language, on and in connection with petroleum products, in the States of Mississippi, Alabama, Florida, Georgia and Kentucky.

13. Plaintiff is informed and believes and therefore avers that defendant has been and now is using plaintiff's trademarks ESSO, ESSOMARINE, ESSOTANE and other trademarks which include ESSO pursuant to the agreements which are set forth in Paragraphs 9, 10 and 11 above on and in connection with the sale, offering for sale and advertising, in the States of Mississippi, Alabama, Florida, Georgia and Kentucky and in interstate commerce of various petroleum products which it has purchased from plaintiff or its affiliated companies.

14. The actual controversy between plaintiff and defendant is that defendant claims that plaintiff may not sell, offer for sale, or advertise petroleum products of any kind under the trademark ESSO in the States of Mississippi, Alabama, Florida, Georgia and Kentucky; whereas, plaintiff claims that it has the right and the privilege to sell, offer for sale and advertise petroleum products of any and every kind under the trademark ESSO in the said states. Defendant has threatened plaintiff that, if plaintiff were to sell any ESSO products in any of the said states, defendant would be obliged to and would institute suit against plaintiff.

WHEREFORE, plaintiff prays that this Court will declare the rights and legal relations of the parties in respect of the controversy hereinabove set forth and to that end demands that this Court adjudge and decree:

1. That plaintiff has the right to sell, offer for sale and advertise petroleum products of any and every kind under its trademark ESSO and any of its other trademarks which include ESSO in the States of Mississippi, Alabama, Florida, Goergia and Kentucky.

2. That defendant has no right or privilege to sell, offer for sale or advertise petroleum products of any kind under the trademark ESSO or any other trademarks which include ESSO, except as it is expressly permitted to do so in the States of Mississippi, Alabama, Florida, Georgia and Kentucky, pursuant to the terms and conditions of the agreements in writing which are set forth in Paragraphs 9, 10 and 11 above.

3. That the sale, offering for sale and advertising by plaintiff of petroleum products of any and every kind under its trademark ESSO or any of its other trademarks which include ESSO in the States of Mississippi, Alabama, Florida, Georgia and Kentucky, does not constitute a breach of any of the agreements in writing which are set forth in Paragraphs 9, 10 and 11 above.

4. That the sale, offering for sale and advertising by plaintiff of petroleum products of any and every kind under its trademark ESSO or any of its other trademarks which include ESSO in the States of Mississippi, Alabama, Florida, Georgia and Kentucky, does not constitute infringement of any rights of defendant or unfair competition with defendant.

5. That defendant be permanently enjoined and restrained from interfering in any manner with plaintiff's exercise of its rights to sell, offer for sale and advertise petroleum products of any and every kind under its trademark ESSO or any of its other trademarks which include ESSO in the States of Mississippi, Alabama, Florida, Georgia and Kentucky.

6. That plaintiff have and recover the costs and disbursements of this action, together with reasonable attorneys' fees herein.

7. That plaintiff have such other and further relief as to the Court may seem just and proper.

M. M. ROBERTS

M. M. Roberts
Of Attorneys for Plaintiff
Citizens Bank Building
Hattiesburg, Mississippi

JOE A. THOMPSON

Of Attorneys for Plaintiff
Hattiesburg, Mississippi

Of Counsel:

Forrest Darrough
Carl Illig
1216 Main Street
Houston, Texas

Dillard W. Baker
Box 2180
Houston, Texas

Francis X. Clair
30 Rockefeller Plaza
New York 20, New York

Leslie D. Taggart
Leslie D. Taggart
Nicholas John Stathis
of Watson, Leavenworth, Kelton & Taggart
100 Park Avenue
New York 17, New York"

– O –

"MOTION TO AMEND COMPLAINT

Plaintiff moves the court for authority to amend the complaint herein as follows:

1. Add to paragraph 9, the following sentence: 'A copy of said agreement (omitting Schedules A & B thereof) is attached hereto and made a part hereof as plaintiff's Exhibit 1.'

2. Add to paragraph 10, the following sentence: 'A copy of said agreement is attached hereto and made a part hereof as plaintiff's Exhibit 2.'

3. Add to paragraph 11, the following sentence: 'A copy of said agreement is attached hereto and made a part hereof as plaintiff's Exhibit 3.'

JOE A. THOMPSON

M. M. ROBERTS

Of Attorneys for Plaintiff
Hattiesburg, Mississippi"

"NOTICE OF MOTION

TO: Honorable Pat H. Eager
Messrs. Watkins & Eager
800 Plaza Building
Jackson, Mississippi

Honorable Beverly W. Pattishall
2430 Prudential Plaza
Chicago 1, Illinois

Messrs. Middleton, Seelback, Wolford, Willis & Cochran
501 South Second Street
Louisville 2, Kentucky

Please take notice that the undersigned will bring the above motion on for hear-

ing before the Honorable S. C. Mize, United States District Judge, at time and place agreeable to the court and the attorneys in interest.

WITNESS MY SIGNATURE on the 8th day of July, A.D., 1961.

M. M. ROBERTS
Of Attorneys for Plaintiff
Hattiesburg, Mississippi"

(The Agreements are not set forth here because they already have been included in this Opinion.)

– O –

ANSWER AND COUNTERCLAIM

"ANSWER

Defendant (which term includes its predecessor) answers plaintiff's amended complaint as follows:

1–3. Defendant admits the allegations of paragraphs 1 through 3.

4. Defendant denies that plaintiff, since long prior to any of the acts of defendant complained of in the Complaint, has been selling various petroleum products in or into the States of Mississippi, Alabama, Florida, Georgia and Kentucky except for certain petroleum products sold to defendant and, more recently, certain petroleum products marketed under the name of OKLAHOMA through plaintiff's eight 'Oklahoma' service stations in Louisville, Kentucky.

5. Defendant denies that plaintiff, since long prior to any of the acts of defendant complained of in the Complaint, has been continuously using its trademark ESSO in the sale of various petroleum products in the States of Mississippi, Alabama, Florida, Georgia, and Kentucky except in connection with lubricants marketed by defendant.

6. Defendant denies the allegations of paragraph 6.

7–8. Defendant admits the issuance of the registrations alleged but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraphs 7 through 8 and therefore denies said allegations.

9. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9 and therefore denies said allegations.

10. Defendant denies that the alleged agreement referred to in paragraph 10 is now in force or effect and further denies that the intent or effect of said alleged agreement was to confer upon plaintiff or any of its predecessors any right to use the trademark ESSOTANE in the States of Florida, Georgia, Alabama, Mississippi, or Kentucky in connection with commercial propane marketed subsequent to the termination or expiration of said alleged agreement.

11. Defendant denies that the alleged agreement referred to in paragraph 11 pertained to or encompassed the marketing of ESSO gasoline or the operation of ESSO service stations or the marketing of any products other than lubricants and defendant further denies that the intent or effect of said alleged agreement was to confer upon plaintiff or any of its predecessors any right to use the name or trademark ESSO in the States of Florida, Georgia, Alabama, Mississippi, or Kentucky except in connection with lubricants marketed by defendant or its authorized distributors or dealers.

12. Defendant denies the allegations of paragraph 12 except insofar as pleaded in paragraph 11 hereof.

13. Defendant denies the allegations of paragraph 13 except defendant admits that it has been and now is marketing lubricants, solvents, and waxes, purchased from plaintiff under the trademark ESSO and other trademarks which include ESSO, but not including ESSO-MARINE or ESSOTANE, in the States of Mississippi, Alabama, Florida, Georgia, and Kentucky and in interstate commerce.

14. Defendant denies the allegations of paragraph 14 except that defendant admits that representatives of plaintiff

were informed by defendant that defendant would object to the use by plaintiff of the name and trademark ESSO in Mississippi, Alabama, Florida, Georgia, and Kentucky to identify plaintiff's service stations, services and products not authorized or distributed by defendant in said States and that defendant would be obliged to and would institute suit against plaintiff to enjoin said acts were they to occur.

## AFFIRMATIVE DEFENSES

For its FIRST Affirmative Defense to the Complaint, defendant avers:

*Intent and Effect of Alleged ESSO Agreement.*

15. The intent and effect of the alleged agreement, Exhibit 3 attached to the amended Complaint, were to set forth specifically the terms and conditions governing defendant's use of plaintiff's trademarks in connection with products supplied defendant by plaintiff and marketed by defendant and to provide specifically for packaging and labeling procedures so as to avoid a claim, defense or attack by others as to the validity of the trademark ESSO on the ground that plaintiff had licensed the use of said trademark to defendant in gross, and to preclude defendant from later asserting a right to the use of the trademark ESSO in Mississippi, Alabama, Georgia, Florida, and Kentucky to identify defendant's lubricants after the termination of the alleged agreement.

16. The aforesaid alleged agreement, Exhibit 3 attached to the amended Complaint, was not intended to and did not recognize in, or convey to, plaintiff or its predecessors any right to use the trademark ESSO, or any trademarks which include ESSO, in Mississippi, Alabama, Georgia, Florida, and Kentucky except when said trademarks are used on products distributed and sold by or through defendant or its authorized distributors or dealers in said States; wherefore, plaintiff is not entitled to judgment herein respecting said alleged agreement.

For its SECOND Affirmative Defense to the Complaint, defendant avers:

*Plaintiff's Construction Of Agreements Violates Public Policy.*

17. Defendant hereby incorporates by reference herein the averments of paragraphs 15 and 16 of its First Affirmative Defense.

18. Plaintiff's construction, as alleged in paragraphs 9 through 12 and 14 of the Complaint, of the alleged agreements, Exhibits 1 through 3 attached to the amended Complaint, violates the public policy of the States of Mississippi, Alabama, Georgia, Florida, and Kentucky and the criminal statutes of the States of Mississippi (Miss.Code, Tit. 20, Sec. 5092), Alabama (Code of Ala., Tit. 2, Sec. 416–425), and Florida (F.S.A. Sec. 526.01–526.11), in that said construction would require that this Court declare as lawful the simultaneous use of related trademarks by unrelated companies in the same territory for the same goods and services, despite said trademarks' having been finally adjudicated to be likely to cause, and being likely to cause and having caused, public confusion respecting the origin of said goods and services; wherefore, plaintiff is estopped from asserting said construction and from maintaining this action thereupon and is not entitled to judgment herein.

For its THIRD Affirmative Defense to the Complaint, defendant avers:

*Plaintiff Is Guilty Of Unclean Hands.*

19. Defendant hereby incorporates by reference herein the averments of paragraphs 17 and 18 of its Second Affirmative Defense.

### A. Criminal Statutes

20. Plaintiff's use of the name and trademark ESSO for automotive service stations, gasoline and various petroleum products in defendant's aforesaid territory violates the criminal statutes of the States of Mississippi (Miss.Code, Tit. 20, Sec. 5092), Alabama (Code of Ala., Tit. 2, Sec. 416–425), and Florida (F.S.A. §§ 526.01–526.11), prohibiting the use of deceptive names, trademarks or brands

in marketing gasoline and other petroleum products in said States; wherefore, plaintiff is guilty of unclean hands and is estopped from maintaining this action.

### B. Plaintiff's STANDARD, STANDARD OIL, and ESSO Registrations

21. With full knowledge of the exclusive rights of defendant in and to the names and trademarks STANDARD OIL, STANDARD, and KYSO, and abbreviations and derivations thereof, for automotive services, service stations, gasoline, and other automotive service station products, in Mississippi, Alabama, Georgia, Florida, and Kentucky, and will full knowledge of the exclusive rights of others in and to the names and trademarks STANDARD OIL and STANDARD, and abbreviations and derivations thereof, respecting said goods and services in other states, and being privy to a final decree prohibiting the use of ESSO respecting said goods and services in other states, plaintiff has maintained federal trademark registrations of ESSO, and variations thereof, without having limited said registrations as to their incorrect manifestation and assertion of an exclusive right to use said trademark throughout the United States for automotive service station products, pursuant to the concurrent use registration provisions of the United States Trademark Statutes, 15 U.S.C. § 1052.

22. With full knowledge of the exclusive rights of others in and to the names and trademarks STANDARD OIL and STANDARD in various States of the United States, including defendant's exclusive rights in and to said names and trademarks STANDARD OIL and STANDARD in the States of Mississippi, Alabama, Georgia, Florida, and Kentucky, plaintiff has wrongfully procured and subsequently maintained unlimited and unrestricted federal registrations for the trademarks STANDARD OIL and STANDARD by knowingly making false declarations and representations of an exclusive right to use said trademarks throughout the United States, including the States of Mississippi, Alabama, Georgia, Florida, and Kentucky; wherefore, plaintiff is guilty of unclean hands and is estopped both directly and collaterally from maintaining this action.

WHEREFORE, defendant prays that the Complaint be dismissed with judgment for defendant, and that defendant be awarded its costs, disbursements, and reasonable attorneys' fees herein."

### "COUNTERCLAIM

Standard Oil Company, defendant-counterclaimant, counterclaims against Humble Oil & Refining Company, plaintiff-counterdefendant, and states:

### COUNT I—TRADEMARK INFRINGEMENT

1. Standard Oil Company, counterclaimant (which term hereinafter includes its predecessor), is a corporation of the State of Kentucky with its offices and principal place of business located at Starks Building, Box 1446, Louisville 1, Kentucky.

2. Humble Oil & Refining Company, counterdefendant (which term hereinafter includes its predecessors and parent corporation and other subsidiaries thereof), is a Delaware corporation with its offices and principal place of business located at 1216 Main Street, Houston, Texas.

3. This Court has jurisdiction because this is a civil action arising between citizens and residents of different states wherein the amount in controversy exceeds the sum or value of ten thousand dollars ($10,000.00) exclusive of interest and costs, and also because this action arises under the trademark laws of the United States, Title 15 U.S.C. Sections 1051 et seq., and under the Judicial Code, Title 28 U.S.C. Section 1338.

4. Counterclaimant is, and for many years past has been engaged in the business of leasing, licensing, and operating automotive service stations, and in the business of selling gasoline and other petroleum products and motor vehicle serv-

ices in the States of Mississippi, Alabama, Georgia, Florida, and Kentucky, hereinafter referred to as counterclaimant's territory.

5. In 1886 counterclaimant adopted the corporate name and business style 'Standard Oil Company' and counterclaimant, for many years past, has been and now is known by the trade and public throughout counterclaimant's territory as 'Standard Oil,' 'Standard,' 'S.O.,' 'Kyso,' and abbreviations and derivations thereof.

6. The aforesaid service stations which counterclaimant leases, licenses, and operates in its territory are identified by counterclaimant's names, service marks, and trademarks 'Standard Oil,' 'Standard,' 'S.O.', 'Kyso' and abbreviations and derivations thereof, and said service stations are identified and known by the trade and public in said territory as STANDARD OIL, STANDARD, and KYSO stations, and the aforesaid products sold and services rendered at counterclaimant's said stations are known in the territory as STANDARD OIL, STANDARD, and KYSO products and services.

7. The aforesaid sales by counterclaimant of services, gasoline, and other petroleum products under counterclaimant's aforesaid names, service marks, and trademarks have been in large and substantial amounts continuously and annually for many years past and have totaled many billions of dollars in value.

8. Counterclaimant has continuously advertised and promoted its aforesaid services, service stations, gasoline, and other petroleum products annually throughout its territory in various media with large and substantial expenditures amounting to many millions of dollars, and said advertising and promotion has featured prominently counterclaimant's aforesaid names, service marks, and trademarks.

9. As a result of the aforesaid sales and advertising under counterclaimant's aforesaid names, service marks, and trademarks, said names, service marks, and trademarks have been and now are understood and used by the trade and public in said territory to identify the services, service stations, gasoline, and other petroleum products of counterclaimant and said names, service marks, and trademarks have become, since long prior to 1920, and now are distinctive of counterclaimant's services, service stations, and products and have acquired, since long prior to 1920, a distinctiveness and secondary meaning signifying counterclaimant and its said services and products in said territory.

10. As a result of counterclaimant's aforesaid sales and advertising of its services and products, counterclaimant, since long prior to 1920, has developed, acquired, and maintained a good will of great value among the trade and public in its territory and counterclaimant is the rightful and exclusive owner of said good will and of its aforesaid names, service marks, and trademarks STANDARD OIL, STANDARD, KYSO, and abbreviations and derivations thereof, which represent, identify, and symbolize counterclaimant's said good will in said territory.

11. As a result of the aforesaid valuable good will owned by counterclaimant and represented and symbolized by counterclaimant's aforesaid names, service marks, and trademarks, said names, service marks, and trademarks have been, since long prior to 1920, and now are of great value to counterclaimant.

12. For many years counterclaimant has purchased large quantities of gasoline and other petroleum products from counterdefendant, its predecessors and others and conterclaimant has marketed and sold said products under its aforesaid names, service marks, and trademarks through its aforesaid service stations.

13. Recently counterclaimant announced its intention eventually to decrease its purchases of gasoline and other petroleum products from counterdefendant pursuant to the final judgment entered June 5, 1961, in a civil action in

the United States District Court for the Western District of Kentucky, entitled United States of America v. Standard Oil Company (New Jersey), Humble Oil & Refining Company, and Standard Oil Company (Kentucky), Civil Action Number 3722.

14. Immediately following the entry of the foregoing final judgment, counterdefendant changed the name of its OKLAHOMA automotive service stations in counterclaimant's territory to ESSO and acquired other service stations which plaintiff renamed ESSO, whereupon, for the first time, counterdefendant commenced selling, distributing, promoting, advertising, and offering for sale through said ESSO service stations in counterclaimant's territory, gasoline, and other petroleum products and motor vehicle services under the name, service mark, and trademark ESSO, notwithstanding counterdefendant's policy and program of employing and using the names and trademarks 'Humble' and ENCO in the territories of the other 'Standard Oil' companies not affiliated with counterdefendant in conformity and consistent with the injunction decreed in Esso, Inc. v. Standard Oil Co., 98 F.2d 1 (8th Cir., 1938) restraining counterdefendant from using said ESSO name, service mark, and trademark in the territory of another non-affiliated 'Standard Oil' company on the ground that said ESSO name, service mark, and trademark are confusingly similar to the names, service marks, and trademarks STANDARD OIL and STANDARD.

15. On information and belief, counterdefendant intends greatly to expand the number of ESSO service stations and the sale, distribution, promotion, advertising, and offering for sale of gasoline and other petroleum products and motor vehicle services under said name, service mark, and trademark ESSO throughout counterclaimant's territory.

16. The name, service mark, and trademark ESSO recently employed by counterdefendant in counterclaimant's territory as aforesaid is associated with STANDARD OIL, STANDARD, S.O., KYSO, and abbreviations and derivations thereof in said territory and is understood and believed by many of the motoring public and others in said territory to be an equivalent, abbreviation, contraction, derivation, or simulation of counterclaimant's aforesaid names, service marks, and trademarks and is known and understood to mean and to signify counterclaimant and its aforesaid services and products in counterclaimant's territory.

17. Counterdefendant's aforesaid recent adoption and use of ESSO in counterclaimant's territory has caused and is likely to cause customers and prospective customers to assume erroneously that counterdefendant's aforesaid ESSO services, service stations, gasoline, and other petroleum products in counterclaimant's territory are the services or products of counterclaimant or of counterclaimant's legitimate, authorized service stations and dealers.

18. Counterclaimant's aforesaid use of STANDARD OIL, STANDARD, S.O., KYSO, and abbreviations and derivations thereof, designating and identifying its services, service stations, gasoline, and other petroleum products has continued since long prior to any use by counterdefendant of the name, service mark, and trademark ESSO for its aforesaid services and products in counterclaimant's territory.

19. On information and belief, counterdefendant's acts complained of herein are intended to and do pre-empt and appropriate counterclaimant's aforesaid good will and secondary meaning represented and symbolized by counterclaimant's aforesaid names, service marks, and trademarks in counterclaimant's territory.

20. The acts of counterdefendant complained of herein were committed by counterdefendant with full knowledge of counterclaimant's business, good will, rights in, and prior use of counterclaimant's aforesaid names and marks.

21. The aforesaid use of ESSO by counterdefendant in counterclaimant's

territory is a colorable imitation of and is confusingly similar to counterclaimant's aforesaid names, service marks, and trademarks.

22. The acts of counterdefendant complained of herein have caused and are causing counterclaimant substantial and irreparable damage, and said acts will continue so to damage counterclaimant unless restrained by this Court, and counterclaimant is without adequate remedy at law.

23. The aforesaid acts of counterdefendant complained of herein constitute statutory and common law trademark infringement under the law of the States of Mississippi, Alabama, Georgia, Florida, and Kentucky and the United States (15 U.S.C. 1125a.

COUNT II—UNFAIR COMPETITION

24. Counterclaimant hereby realleges and incorporates by reference herein the allegations of paragraphs 1 through 22 of Count I.

25. Long subsequent to counterclaimant's aforesaid adoption and use of STANDARD OIL, STANDARD, S.O., KYSO, and abbreviations and derivations thereof, in counterclaimant's territory, counterdefendant commenced use of and now uses the trade name and business style 'ESSO' and 'ESSO STANDARD' in said territory.

26. Counterdefendant's aforesaid use of the trade name and business style 'ESSO' and 'ESSO STANDARD' in counterclaimant's territory is likely to and has resulted in confusion and deception with counterclaimant as to the source of said automotive services and products in said territory in that members of the motoring public and others in said territory are likely to associate and identify, and have associated and identified, counterdefendant's aforesaid ESSO automotive service stations, services and products with counterclaimant's aforesaid service stations, services, and products.

27. Continuously since long prior to the acts of counterdefendant complained of herein, counterclaimant has employed for its aforesaid service stations in its territory a trade dress and a distinctive color scheme and general appearance predominantly red, white, and blue in color and said service stations are recognized, known and identified by the motoring public and others in counterclaimant's territory as service stations owned, operated, licensed, or leased by counterclaimant, or in some way legitimately related to or connected with counterclaimant.

28. Since long prior to the acts of counterdefendant complained of herein, the aforesaid predominantly red, white, and blue trade dress, color scheme, and general appearance of counterclaimant's service stations have become and now are distinctive of counterclaimant's service stations and said trade dress, color scheme and general appearance have acquired a distinctiveness and secondary meaning signifying counterclaimant and its said service stations in its territory.

29. Counterdefendant's aforesaid ESSO service stations in counterclaimant's territory recently have been painted predominantly red, white, and blue by counterdefendant corresponding to and simulating the trade dress, color scheme and general appearance of counterclaimant's aforesaid service stations in said territory.

30. The aforesaid trade dress, color scheme, and general appearance of counterdefendant's ESSO service stations in counterclaimant's territory are likely to result, and have resulted, in confusion and deception by causing members of the motoring public and others erroneously to assume or believe that counterdefendant's said service stations are owned, operated, licensed, or leased by counterclaimant, or are in some way legitimately related to, authorized by, or connected with counterclaimant.

31. On information and belief, counterdefendant's recent adoption and use in counterclaimant's territory of the name and trademark ESSO to identify service stations of a general appearance as aforesaid was and is for the purpose of wrongfully enhancing, encouraging, and ex-

**610**

ploiting confusion within counterclaimant's territory.

32. The acts of counterdefendant complained of in Counts I and II hereof are likely to invest and have invested counterdefendant's aforesaid ESSO services, service stations, and products with counterclaimant's aforesaid good will thereby wrongfully investing counterdefendant's said ESSO services and products with a salability and commercial magnetism which they otherwise would not possess in counterclaimant's territory.

33. Counterdefendant's aforesaid use of 'ESSO' and 'ESSO STANDARD' in counterclaimant's territory violates the public policy of each of the States of counterclaimant's territory and the criminal statutes of the States of Mississippi (Laws 1938, Ch. 145; 1946, Ch. 263, Sec. 12), Alabama (1940 Title 2, Sections 416–425), and Florida (Sections 526.01–526.11), specifically prohibiting the use of deceptive names, trademarks, or brands in marketing gasoline and other petroleum products in said States.

34. The aforesaid acts of counterdefendant complained of in Counts I and II hereof have resulted, and are likely to result, in wrongful profits to and unjust enrichment of counterdefendant in counterclaimant's territory, and have resulted, and are likely to result, in diminishing unjustly the aforesaid sales of counterclaimant in said territory.

35. The aforesaid acts of counterdefendant complained of constitute unfair competition under the common law and the trademark statutes of the United States (15 U.S.C. 1125a, 1126b, 1126h, and 1126i and are greatly and irreparably damaging to counterclaimant and, unless restrained by this Court, will continue greatly and irreparably to damage counterclaimant.

WHEREFORE, as to Count I (TRADEMARK INFRINGEMENT) and Count II (UNFAIR COMPETITION), counterclaimant prays that:

1. Counterdefendant, its agents, employees, privies, successors, assigns, and all other persons acting by, through, for, or under the authority or consent of counterdefendant, be, during the pendency of this action and permanently thereafter, enjoined and restrained from using the name, service mark, and trademark ESSO, or any other abbreviation or derivation of the words STANDARD OIL or STANDARD, or any name, service mark, or trademark confusingly similar to counterclaimant's names, service marks, and trademarks STANDARD OIL, STANDARD, or KYSO, for automotive services, service stations, gasoline, or other automotive service station products, either separately or in combination with a red, white, and blue trade dress or color scheme, in the States of Mississippi, Alabama, Georgia, Florida, and Kentucky, except when said products or services are sold through counterclaimant or its authorized distributors or dealers.

2. Counterdefendant be ordered to reimburse counterclaimant for all damages sustained by counterclaimant resulting from the acts complained of herein.

3. Counterdefendant be ordered to account and pay over to counterclaimant all profits derived from the acts complained of herein.

4. Counterdefendant be ordered to reimburse counterclaimant for its costs, disbursements, and attorneys' fees herein.

5. Counterclaimant have such other and further relief as this Court may deem equitable and just.

## COUNT III—AMENDMENT OF TRADEMARK REGISTRATIONS

36. Counterclaimant hereby realleges and incorporates by reference herein the allegations of paragraphs 1 through 23 of Count I and paragraphs 32, 33, and 35 of Count II.

37. Counterdefendant obtained and subsequently maintained the following registrations of the trademarks STANDARD and ESSO in the United States Patent Office for gasoline and other automobile service station products and none

of said registrations is limited as to areas of use and each manifests a claim to the right to the exclusive use of said trademarks throughout the United States including the States of Mississippi, Alabama, Georgia, Florida, and Kentucky:

| MARK | REG. NO. | GOODS |
|------|----------|-------|
| STANDARD | 50,889 | Illuminating Oils |
| STANDARD OIL & design | 91,389 | Refined petroleum |
| STANDARD OIL & design | 95,171 | Refined petroleum |
| STANDARD OIL | 154,846 | Harness oil, harness polishing oil, etc. |
| STANDARD OIL | 155,909 | Paving asphalts, asphalts flooring, etc. |
| STANDARD | 155,910 | Paving asphalts, mixing asphalts, paving fluxes, etc. |
| STANDARD OIL | 155,911 | Floor oils and furniture polish |
| STANDARD OIL | 156,145 | Oils, greases |
| STANDARD OIL | 156,551 | Axle grease, black grease, burning oils, lantern oils, etc. |
| STANDARD | 156,552 | Sewing machine oils, transformer oils, road oils, etc. |
| STANDARD OIL | 160,349 | Axle greases, black greases, candles cylinder oils, etc. |
| STANDARD | 160,350 | Floor dressing, floor oil |
| STANDARD OIL & design | 174,387 | Refined petroleum oil |
| STANDARD & design | 211,361 | Refined, unrefined oils |
| STANDARD & design | 224,804 | Refined, unrefined oils and greases |
| STANDARD & design | 227,458 | Floor oil and floor dressing |
| STANDARD & design | 227,457 | Paraffin wax |
| STANDARD & design | 228,002 | Asphalt and asphalt brick filler |
| STANDARD OIL | 234,484 | Insecticides, mineral oils, deodorants |
| STANDARD OIL | 336,988 | Floor oils |
| STANDARD OIL | 337,835 | Petrolatums |
| STANDARD OIL | 338,114 | Harness oil, paraffin wax, leather oil |
| STANDARD OIL | 338,622 | Refined, unrefined oils |
| STANDARD OIL | 338,892 | Paving asphalts, mixing asphalts |
| ESSO | 176,408 | Refined, semirefined, and unrefined oils made from petroleum, both with and without admixture of animal, vegetable, or mineral oils, for illuminating, burning, power, fuel, and lubricating purposes, and greases |

| MARK | REG. NO. | GOODS |
|---|---|---|
| ESSO | 220,294 | Refined, semirefined, and unrefined oils made from petroleum, both with and without admixture of animal, vegetable, or mineral oils, for illuminating, burning, power, fuel, and lubricating purposes, and greases |
| ESSO | 258,648 | Liquid gloss wood and metal polish and floor dressing for application to wooden floors |
| ESSO | 280,830 | Glass pump globes and lenses thereof |
| ESSO | 282,259 | Dispensing pumps and parts thereof |
| ESSO | 341,347 | Asphalt |
| ESSO | 347,466 | Refined, semirefined, and unrefined oils made from petroleum, both with and without admixture of animal, vegetable, or mineral oils, for illuminating, burning, power, fuel, and lubricating purposes, and lubricating greases |
| ESSO | 347,467 | Refined, semirefined, and unrefined oils made from petroleum, both with and without admixture of animal, vegetable, or mineral oils, for illuminating, burning, power, fuel, and lubricating purposes, and lubricating greases |
| ESSO | 347,535 | Asphalt |
| ESSO | 353,972 | Floor dressing for application to wooden floors |
| ESSO | 354,294 | Leather oil |
| ESSO | 398,713 | Refined, semirefined, and unrefined oils made from petroleum, both with and without admixture of animal, vegetable, or mineral oils, for illuminating, burning, power, fuel, and lubricating purposes, and lubricating greases |

38. Counterdefendant's aforesaid registered trademarks are confusingly similar to the names and trademarks STANDARD OIL, STANDARD, and abbreviations and derivations thereof, which are separately and independently owned and used in various distinct and separate territories of the United States by counterclaimant and other non-affiliated 'Standard Oil' companies in no way related to or connected with counterdefendant.

39. Counterdefendant's trademark ESSO has been adjudicated against coun-

terdefendant's predecessor to be an abbreviation of, an equivalent to, and confusingly similar to the trademarks STANDARD OIL and STANDARD and abbreviations and derivations thereof, and counterdefendant's predecessor and its successors, including counterdefendant, have been permanently enjoined from using said trademark ESSO, or any other trademarks confusingly similar to STANDARD OIL and STANDARD, in the States of Missouri, Colorado, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, North Dakota, Oklahoma, South Dakota, Wisconsin, and Wyoming (Esso, Inc. v. Standard Oil Co., 98 F.2d 1 (8th Cir., 1938)).

40. Counterdefendant's aforesaid federal trademark registrations assert and manifest incorrect claims of an exclusive right to use STANDARD, STANDARD OIL, and ESSO throughout the United States.

41. Counterdefendant's aforesaid registrations were obtained and subsequently maintained by counterdefendant and its predecessors with full knowledge of counterclaimant's prior rights in and to the names, service marks, and trademarks STANDARD OIL, STANDARD, S. O., KYSO, and abbreviations and derivations thereof, for service stations, motor vehicle services, gasoline, and other petroleum products in counterclaimant's territory.

42. Counterdefendant's aforesaid wrongful procurement and maintenance of unlimited and unrestricted federal registration for the trademarks STANDARD OIL and STANDARD by knowingly making false declarations and representations of an exclusive right to use said trademarks throughout the United States, including counterclaimant's territory, have resulted, and are likely to result, in great and irreparable damage to counterclaimant for which counterdefendant is liable under the trademark statutes of the United States (15 U.S.C. 1120).

43. Counterdefendant's aforesaid procurement and maintenance of unlimit-

ed and unrestricted federal registrations for the trademark ESSO have resulted, and are likely to result, in great and irreparable damage to counterclaimant.

WHEREFORE, as to Count III (AMENDMENT OF TRADEMARK REGISTRATIONS), counterclaimant prays that:

1. The United States Commissioner of Patents be directed, in accordance with 15 U.S.C. 1119, to amend counterdefendant's United States trademark registrations, enumerated in paragraph No. 37 hereof, so as to exclude therefrom the States of Mississippi, Alabama, Georgia, Florida, and Kentucky.

2. Counterdefendant be ordered to reimburse counterclaimant for its damages pursuant to 15 U.S.C. 1120 and its costs, disbursements, and attorneys' fees herein.

3. Counterclaimant have such other and further relief as this Court may deem equitable and just.

WOODSON, PATTISHALL & GARNER
By BEVERLY W. PATTISHALL
 Beverly W. Pattishall
 2430 Prudential Plaza
 Chicago 1, Illinois

WATKINS & EAGER
By WILLIAM E. SUDDATH, JR.
 William E. Suddath, Jr.
 800 Plaza Building
 Jackson, Mississippi
 Attorneys for Defendant-
 Counterclaimant

Dated: Jan. 23, 1962

OF COUNSEL:

Louis Seelbach
Charles G. Middleton, Jr.
 Middleton, Seelbach, Wolford,
 Willis & Cochran
 501 South Second Street
 Louisville 1, Kentucky
Dana Brown
 501 South Second Street
 Louisville 1, Kentucky"
 – O –

The Answer and Counterclaim was amended by substituting the word "with"

for the word "will" in line 9 of paragraph 21; also by substituting the word "counter-defendant" for the word "plaintiff" in line 5 of paragraph 14 of the Counterclaim; by supplementing Counts 1 and 2 of the Counterclaim with this allegation: "Counterclaimant realleges as of the date of trial each and every allegation of Counts I and II of the counterclaim herein as amended, and prays for the relief set forth in the prayer following Counts I and II of the said counterclaim." Also, "By deleting from paragraph 37 of the counterclaim the reference to registration numbers 50,889, 91,389, 95,171, 156,145, 174,387 and 234,-484. The said registrations constitute the first, second, third, eighth, thirteenth and nineteenth registrations in the list of registrations in the said paragraph of the counterclaim."

## "REPLY
## AS TO COUNT I OF THE COUNTERCLAIM

1. Plaintiff (which term refers herein where applicable to its predecessor and affiliated companies) admits the averments in paragraph 1 of the counterclaim.

2. Plaintiff admits the averments in paragraph 2 of the Counterclaim.

3. Plaintiff denies the averments in paragraph 3 of the Counter-claim except that plaintiff admits that this Court has jurisdiction with respect to Counts I and II of the Counterclaim because this is a civil action arising between citizens and residents of different States wherein the amount in controversy exceeds the sum or value of Ten Thousand Dollars ($10,-000.00) exclusive of interest and costs.

4. Plaintiff admits the averments in paragraph 4 of the Counterclaim except that plaintiff denies that the States of Mississippi, Alabama, Georgia, Florida and Kentucky are defendant's territory.

5. Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 5 of the Counterclaim.

6. Plaintiff denies the averments in paragraph 6 of the Counterclaim except that plaintiff admits that defendant has for many years past sold and now is selling its gasoline under its trademark 'CROWN', 'CROWN EXTRA' and other variations of 'CROWN' and has sold and is selling lubricating oil purchased from plaintiff under plaintiff's trademark ESSO and has been and is selling lubricating oil purchased from Socony Mobil Oil Company under the trademark MOBIL, which plaintiff believes is the trademark of said Socony Mobil Oil Company for petroleum and other products, and has recently been and now is selling lubricating oil under the trademark RPM of its new parent company, Standard Oil Company of California, which product it has purchased from said parent company, and has been selling and now is selling various other products under various of its trademarks and various products purchased from others under the trademarks of such other concerns.

7. Plaintiff denies the averments in paragraph 7 of the Counterclaim, except that plaintiff admits that defendant's sales of petroleum and other products and services under its own trademarks and under the trademarks of plaintiff and of other concerns have been in large and substantial amounts continuously and annually for many years past and have totaled many billions of dollars in value.

8. Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 8 except as admitted in paragraph 6 hereof.

9. Plaintiff denies the averments in paragraph 9 of the counterclaim.

10. Plaintiff denies the averments in paragraph 10 of the Counterclaim.

11. Plaintiff denies the averments in paragraph 11 of the Counterclaim.

12. Plaintiff denies the averments in paragraph 12 of the Counterclaim, except that plaintiff admits that defendant has since prior to 1911 purchased large quantities of various petroleum products from plaintiff and that defendant has for a

long period of time purchased large quantities of various petroleum products from concerns other than plaintiff, and that defendant has for many years sold the gasoline it so acquired under its trademarks 'CROWN', 'CROWN EXTRA' and other variations thereof and has sold various of plaintiff's petroleum products it purchased from plaintiff under plaintiff's trademark ESSO and trademarks including 'ESSO', and has sold Socony's lubricating oil it purchased from Socony under Socony's trademark MOBIL and has purchased from various concerns various other products which it has sold under their respective trademarks.

13. Plaintiff denies the averments in paragraph 13 of the Counterclaim, except that plaintiff admits that defendant, together with its present parent company, Standard Oil Company of California, which became a defendant in the civil action referred to below for the purpose of acquiring defendant herein, jointly and severally entered into a Consent Judgment, on or about June 5, 1961, in a civil action in the United States District Court for the Western District of Kentucky, entitled United States of America v. Standard Oil Company (New Jersey), Humble Oil & Refining Company, and Standard Oil Company (Kentucky), Civil Action Number 3722, (for the terms of which the Court is respectfully referred to such Consent Judgment), and that defendant wrote identical letters dated June 26, 1961 to plaintiff and Standard Oil Company (incorporated in New Jersey) pursuant to said Consent Judgment, copies of which are attached hereto and made a part hereof.

14. Plaintiff denies the averments of paragraph 14 of the Counterclaim except that plaintiff admits that it built or acquired service stations which bore, after building or acquisition, 'Humble' and ESSO, that it has continued to and is continuing to build and to acquire such service stations in or near Louisville, Kentucky which were referred to as 'Oklahoma' stations, which in due course, came to bear and now bear HUMBLE and ESSO, and that in all said service stations

ESSO products are sold either from gasoline pumps bearing ESSO or in other packages and containers bearing ESSO.

15. Plaintiff denies the averments of paragraph 15 of the Counterclaim except that plaintiff admits and avers that it has built or acquired and is continuing to build or acquire and intends in the future to build or acquire as many service stations, all of which will bear HUMBLE and ESSO generally in the same manner as its present service stations in the five state area, as is consistent with sound business practice bearing in mind plaintiff's loss of marketing of a very substantial quantity of petroleum product as the result of defendant and its present parent company's entering, without any prior notice to plaintiff, into the Consent Judgment pleaded in paragraph 13 of defendant's Counterclaim.

16. Plaintiff denies the averments in paragraph 16 of the Counterclaim.

17. Plaintiff denies the averments in paragraph 17 of the Counterclaim.

18. Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 18 of the Counterclaim.

19. Plaintiff denies the averments in paragraph 19 of the Counterclaim.

20. Plaintiff denies the averments in paragraph 20 of the Counterclaim.

21. Plaintiff denies the averments in paragraph 21 of the Counterclaim.

22. Plaintiff denies the averments in paragraph 22 of the Counterclaim.

23. Plaintiff denies the averments in paragraph 23 of the Counterclaim.

## AS TO COUNT II OF THE COUNTERCLAIM

24. With respect to the averments contained in paragraph 24 of defendant's Counterclaim, plaintiff repeats and reavers the averments of paragraphs 1 through 23 herein as though here set forth in full.

25. Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the averments in para-

graph 25 of the Counterclaim except that plaintiff has long used principally through defendant as its distributor its trademark 'ESSO' and its trademarks containing 'esso' in the five state area and since June, 1961, has used its trademark 'ESSO' directly, and not through defendant as its distributor, in the five state area.

26. Plaintiff denies the averments in paragraph 26 of the Counterclaim.

27. Plaintiff denies the averments in paragraph 27 of the Counterclaim.

28. Plaintiff denies the averments in paragraph 28 of the Counterclaim.

29. Plaintiff denies the averments in paragraph 29 of the Counterclaim except that plaintiff admits that it employs the colors red, white and blue in connection with the painting of its service stations and in connection with the marketing of its ESSO products wherever ESSO products are sold through service stations.

30. Plaintiff denies the averments in paragraph 30 of the Counterclaim.

31. Plaintiff denies the averments in paragraph 31 of the Counterclaim.

32. Plaintiff denies the averments in paragraph 32 of the Counterclaim.

33. Plaintiff denies the averments in paragraph 33 of the Counterclaim.

34. Plaintiff denies the averments in paragraph 34 of the Counterclaim.

35. Plaintiff denies the averments in paragraph 35 of the Counterclaim.

## AS TO THE COUNT III OF THE COUNTERCLAIM

36. With respect to the averments in paragraph 36 of the Counterclaim, plaintiff repeats and reavers the averments of paragraphs 1, 2, 4 through 23, inclusive, 32, 33 and 35 herein as though here set forth in full. With respect to paragraph 3 of the Counterclaim, insofar as it applies to Count III, plaintiff denies the averments of paragraph 3 except that plaintiff admits that this is an action arising between citizens and residents of different states wherein the amount in controversy exceeds the sum or value of Ten Thousand Dollars ($10,000.00) exclusive of interest and costs and plaintiff admits that this Court has jurisdiction, under Title 15 of the United States Code, § 1119, of the subject matter of Count III only insofar as it involves the federal registrations of the trademark ESSO pleaded by Plaintiff in its complaint.

37. Plaintiff denies the averments in paragraph 37 of the Counterclaim except that plaintiff admits that it obtained and maintained the registrations listed in paragraph 37 of the Counterclaim, in the United States Patent Office, with the exception of registrations 50,889, 91,389, 95,171, 174,387, 156,145 and 234,484, and that the remaining registrations are presently outstanding, validly subsisting and uncancelled, and plaintiff admits that plaintiff has the right to the exclusive use of all the ESSO trademarks listed in said registrations Nos. 176,408–398,713 inclusive, set forth in paragraph 37 of the Counterclaim in the five state area.

38. Plaintiff denies the averments in paragraph 38 of the Counterclaim except that plaintiff admits that a separation of various Standard Oil Companies was effected by the Supreme Court of the United States in the case entitled 'Standard Oil Company of New Jersey v. United States', 221 U.S. 1 [31 S.Ct. 502, 55 L.Ed. 619] (1911) and the Court is respectfully referred to that decision for its holding.

39. Plaintiff denies the averments in paragraph 39 of the Counterclaim except that plaintiff admits that Esso, Inc. v. Standard Oil Co., 98 F.2d 1 (8th Cir., 1938), was concerned with plaintiff's trademark ESSO and the Court is respectfully referred to that decision for its holding.

40. Plaintiff denies the averments in paragraph 40 of the Counterclaim.

41. Plaintiff denies the averments in paragraph 41 of the Counterclaim.

42. Plaintiff denies the averments in paragraph 42 of the Counterclaim.

43. Plaintiff denies the averments in paragraph 43 of the Counterclaim.

## AS AND FOR A FIRST SEPARATE AFFIRMATIVE DEFENSE AS TO COUNTS I AND II OF THE COUNTERCLAIM PLAINTIFF AVERS

44. . Plaintiff repeats and reavers the averments of paragraphs 4–13 inclusive of plaintiff's complaint as though here set forth in full.

45. Defendant is barred and estopped from asserting that plaintiff's use of its trademark ESSO in connection with the marketing of petroleum products in the five state area and elsewhere is an infringement of defendant's trade names or trademarks or that the use by plaintiff of its trademark ESSO in connection with the marketing of petroleum products constitutes unfair competition with defendant.

## AS AND FOR A SECOND SEPARATE AFFIRMATIVE DEFENSE TO COUNTS I AND II OF THE COUNTERCLAIM PLAINTIFF AVERS

46. Plaintiff repeats and reavers the averments of paragraphs 4–13 inclusive of plaintiff's complaint as though here set forth in full.

47. Since long prior to 1938 and continuously thereafter to the present time, defendant has had actual and constructive notice of plaintiff's rights to and plaintiff's claim of rights to the exclusive use of its trademark ESSO for petroleum products in the five state area and elsewhere.

48. Since long prior to 1938 and continuously thereafter to the present time, defendant has recognized and acquiesced in plaintiff's exclusive right to the trademark ESSO in connection with the marketing of petroleum products in the five state area and elsewhere.

49. Upon information and belief, for more than twenty-two years, defendant took no steps, nor initiated any proceedings to prevent or enjoin plaintiff from using its trademark ESSO in connection with the sale and marketing of its petroleum products.

50. By reason of the foregoing, defendant is barred and estopped by laches from asserting that plaintiff, by its use of its trademark ESSO in connection with the marketing of petroleum products in the five state area, infringes any rights of defendant or competes unfairly with defendant.

## AS AND FOR A THIRD SEPARATE AFFIRMATIVE DEFENSE TO COUNTS I AND II OF THE COUNTERCLAIM PLAINTIFF AVERS

51. Plaintiff repeats and reavers the averments of paragraphs 4–13 inclusive of plaintiff's complaint as though here set forth in full.

52. Plaintiff repeats and reavers the averments of paragraphs 47, 48 and 49 hereof as though here set forth in full.

53. As a result of such long and continued notice by plaintiff and recognition and acquiescence by defendant in and to plaintiff's exclusive rights and plaintiff's claim of rights to its trademark ESSO for the marketing of petroleum products in the five state area, defendant is barred and estopped, by such acquiescence, from asserting that plaintiff, by its use of its trademark ESSO in connection with the marketing of petroleum products in the five state area, infringes any rights of defendant or competes unfairly with defendant.

## AS AND FOR A FIRST SEPARATE DEFENSE TO COUNT III OF THE COUNTERCLAIM, PLAINTIFF AVERS

54. This Court lacks jurisdiction of the subject matter of Count III except insofar as it relates to the federal registrations for the trademark ESSO pleaded by plaintiff in its complaint.

## AS AND FOR A SECOND SEPARATE DEFENSE TO COUNT III OF THE COUNTERCLAIM, PLAINTIFF AVERS

55. Plaintiff repeats and reavers the averments set forth in paragraphs 4–13 inclusive of plaintiff's complaint.

56. Plaintiff repeats and reavers the averments set forth in paragraphs 47, 48 and 49 herein as though here set forth in full.

57. By reason of the foregoing, defendant is barred and estopped by its long acquiescence from obtaining the relief sought in Count III of the Counterclaim.

## AS AND FOR A THIRD SEPARATE DEFENSE TO COUNT III OF THE COUNTERCLAIM, PLAINTIFF AVERS

58. Plaintiff repeats and reavers the averments set forth in paragraphs 4-13 inclusive of plaintiff's complaint.

59. Plaintiff repeats and reavers the averment set forth in paragraphs 47, 48 and 49 herein as though here set forth in full.

60. By reason of the foregoing, defendant is barred and estopped by laches from obtaining the relief sought in Count III of the Counterclaim.

WHEREAS plaintiff demands judgment that the Counterclaim herein be dismissed.

M. M. ROBERTS

M. M. Roberts
Citizens Bank Building
Hattiesburg, Mississippi"

Attached to this instrument were photostatic copies of two letters from Standard Oil Company (Kentucky), dated June 26, 1961, one letter addressed to Esso Standard, Division of Humble Oil & Refining Company, 15 West 51st Street, New York 19, New York and to Standard Oil Company (Incorporated in New Jersey) 30 Rockefeller Plaza, New York 20, New York, and the other letter addressed to Humble Oil & Refining Company, Attention Mr. Thomas W. Moore, P. O. Box 2180, Houston, Texas, both letters reading as follows:

"AGREEMENT dated July 5, 1956 between ESSO STANDARD OIL COMPANY, a Delaware corporation, and STANDARD OIL COMPANY, a Kentucky corporation, as supplemented and Amended

Gentlemen:

You are hereby notified that we have elected to, and do hereby, terminate the subject supply Agreement, as supplemented and amended, pursuant to and in accordance with the terms and conditions of Paragraph 'II. TERMINATION' of said Agreement.

We will thank you to acknowledge receipt hereof.

Yours truly,
STANDARD OIL COMPANY
(Incorporated in Kentucky)

BY: W. C. SMITH
President"

- O -

It will be seen that the real question involved is "does Humble have the right to use the ESSO trademark in the 5-state area" and the answer to the question must be determined by a careful consideration of the contracts, the complaint, answer and cross claim and answer thereto, and all the evidence in the case, including all the exhibits and the statements against interest and the conduct of the parties in the construction of these contracts.

Kentucky admits that plaintiff is the owner of the trademark ESSO, but Kentucky denies the right of plaintiff to use the trademark ESSO in the 5-state area and denies the right of Humble to open up filling stations and use the trademark ESSO in connection therewith. There has been much litigation between the various Standard Oil Companies of the nation, but none similar to the issues here. In none of the other cases was a contract involved as is here. The contracts involved in the other litigation between other litigants are different in their terms.

Briefly, the historic background of the use of the separate Standard Oil Companies' trademarks goes back to the decree of the Supreme Court of the United States in 1911. The Standard Oil Company of New Jersey, the plaintiff herein, inherited the right to the Standard Oil name, as did the other Standard Oil Com-

panies. The decree did not mention trademarks, but as a result of the decree there was created a number of entirely separate companies, each one operating under the same name, but taking certain areas of the United States where each began its operation.

Prior to the dissolution of the trust and since that time various abbreviations for ."Standard Oil" came into use. The old Standard Oil of New Jersey was also known as the "S. O. Company", or "S.O. Co.", and these abbreviations remained with the Standard of New Jersey, as well as with the other companies. The trademark "S O" was registered by plaintiff in 1912. Later this mark was written as "ESSO", which was also registered by the plaintiff on November 27, 1923, since which time and up until the present time the plaintiff has used the trademark in various forms in association with and to designate Standard Oil, and in the Eastern area it was generally known and recognized as referring to Standard Oil of New Jersey. Various other Standard Oil Companies used abbreviations to designate Standard Oil, such as SOHIO, meaning Standard of Ohio; KYSO for Standard of Kentucky; SOCONY for Standard of New York; and CALSO for Standard of California.

■■ Because of the various issues involved and the importance of the case, the Court permitted a wide latitude for the introduction of evidence and made rulings upon objections, as a general rule, as the case proceeded, and I now adhere to all of the rulings that were made upon the introduction of the evidence as is shown by the record. Counsel for plaintiff objected to the introduction of a public reaction test that was made by the defendant after this suit was filed. The Court overruled the objection and permitted the test to be received in evidence as being pertinent to the various issues, ruling that the objection went only to the weight of the testimony and not to its admissibility. Counsel for the plaintiff was given a standing objection to all testimony of that type or to any testimony tending to show confusion, on the ground that it was varying the terms of the written contract. The Court overruled other objections of plaintiff to documents and conversations had prior to the signing of the contract and adheres to the ruling heretofore made for the reason that the testimony is admissible to determine the surroundings of the litigants at the time these three contracts were made in order to grasp the intent of the parties in the light of circumstances existing at the time the contracts were made.

Pre-trial discovery extended more than two years. Thousands of documents were reviewed. Kentucky's first response to the plaintiff's subpoena consisted of more than 65,000 documents. The testimony of 49 witnesses was taken at the hearing on an application for a preliminary injunction. The depositions of 144 witnesses were taken. The testimony of 189 witnesses, including the deposition testimony read to the Court, was taken in open court and the parties stipulated to what the testimony of 286 other witnesses would have been if they had been produced. There were 750 exhibits mentioned at the trial.

■■ In the construction of a contract of this type, and as far back as the contracts go, it is necessary for the Court to take into consideration the relationship of the parties and surrounding circumstances at the time of the making of the contract. T. B. Walker Mfg. Co. v. Swift & Co., 5 Cir., 200 F. 529. If the contract is not ambiguous and is free of any fraud, undue influence or over-reaching, and is clear in its terms, then the intent of the contract is obtained from the language used by the contracting parties. E. F. Prichard Co. v. Consumers Brewing Co., 6 Cir., 136 F.2d 512.

Humble is a producing company, as well as a distributor of petroleum products, and owns and operates refineries, one of which is located at Baton Rouge, and various retail filling stations. Kentucky is not a producer and was not at the time of the making of any of the three contracts introduced in evidence, but acquired its products principally from

Humble. The record shows that approximately 80% of its petroleum products were obtained by Kentucky from Humble. That was true prior to January 27, 1955, the date of the contract that is now in controversy. There was considerable negotiation and discussion before the contract was actually signed and after it was drafted in its present condition it was gone over by the attorneys for the litigants, as well as executives, paragraph by paragraph, and after a thorough consideration it was signed. Naturally it would be assumed that a contract of such importance and so far reaching would be thoroughly discussed and considered before execution. The relations between the parties at the time were unusually friendly. None of the executives or attorneys at that time had any fears about operations between themselves, but they were looking to the future and for the purpose of a clear understanding concluded to reduce it to writing, as is shown by the "Whereas" clauses of the contract.

The first "whereas" clause admitted the ownership of the trademarks listed, which included ESSO, together with the *good will of the business* appertaining thereto. That language could not be expressed in clearer terms. The second "Whereas" clause admitted that for many years Kentucky had bought from Esso Standard and marketed such products in the 5-state area under the Esso Standard trademarks *"without giving rise to any confusion with KENTUCKY trademarks,* which during the same period have been actively used by KENTUCKY in the same states". (Emphasis added). The third "Whereas" clause distinctly admitted by both parties that it was their desire to set forth specifically the terms and conditions governing Kentucky's use of these Esso Standard trademarks or any other Esso Standard trademark used thereafter by Kentucky in connection with the products supplied by Esso Standard.

From the above it is crystal clear that the parties desired to reduce to writing their agreement. The contract then states "ESSO STANDARD and KEN-

TUCKY agree as follows", then follows in ten numbered paragraphs the agreements which have heretofore been set out in full, but to show the reasoning upon which this opinion is based it is necessary to refer to certain paragraphs of the agreement.

It will be noted in paragraph numbered (1) that Kentucky admits the ownership and "THE EXCLUSIVE RIGHT. TO THE USE OF THESE ESSO STANDARD TRADEMARKS IN THE STATES OF ALABAMA" and the others in this area. Kentucky further admitted the validity of the registration of the various trademarks and agreed that "while this agreement is in force nor at any time thereafter will it claim any right, title or interest in or to any of these ESSO trademarks." Also, as a part of paragraph numbered (1), but a second paragraph of that caption, Kentucky agreed that all advertising by Kentucky referring to these trademarks would be conducted and made in such manner as not to impair or endanger Esso Standard's ownership of or *right to use these trademarks in Alabama, Florida, Georgia, Kentucky and Mississippi* during or after the termination of the agreement.

In paragraph numbered (2) Kentucky agrees to cooperate with Esso Standard in protecting the trademark, and in paragraph numbered (3) it agreed that it would not sell or offer for sale products under trademarks, labels, etc. confusingly similar to any of these Esso Standard trademarks; and in paragraphs numbered (4), (5), (6), (7), (8), (9) and (10), set out in full heretofore, clearly tends to substantiate all of these agreements contained in these various paragraphs. Paragraph numbered (7) provided that it was personal to Kentucky and not assignable or otherwise transferrable. Paragraph numbered (9) partially might be quoted to emphasize the whole contract in that it says "KENTUCKY agrees also that any and all rights to the use of these trademarks as authorized 'by this agreement' shall upon the termination of the agreement revert to ESSO STANDARD".

In construing this contract the Court has taken into consideration all of the pertinent evidence which may show the conditions surrounding the parties at that time, but the contract is so clear in its terms that evidence to vary the terms, or which tends to vary the terms, has no bearing. It is well settled that when the provisions of a contract are clear and the language chosen by the parties, when given its ordinary meaning and is not ambiguous, then the intention of the parties must be ascertained from the wording of the contract. Jacksonville Terminal Co. v. Railway Express Agency, 5 Cir., 296 F.2d 256; Ard-Dr. Pepper Bottling Co. v. Dr. Pepper Co. et al, 5 Cir., 202 F.2d 372; Roberts et al. v. Corum et al, 236 Miss. 809, 112 So.2d 550.

A contract involving a trademark is construed just as any other contract between the contracting parties. The same rules of construction are applicable to a contract of this type as would be applicable to the construction of any other type of contract. Vol. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 178, p. 513. This is a trademark contract and not one of distributorship.

The contract of March 24, 1934 was received in evidence and is corroborative of the agreements that were contained in the contract of January 27, 1955. The contract was executed by Penola, Inc. and Kentucky, and by its terms defendant, Kentucky, was appointed the sole distributor in the 5-state area of Essomarine lubricants and other petroleum products supplied by plaintiff and its predecessor. The first "Whereas" clause of that contract provides: "Whereas PENOLA owns the ESSOMARINE trademarks shown on the attached schedule 'A' which is hereby made a part hereof together with the business and good will pertaining thereto;" The other "Whereas" clauses set out the desire of the parties to make the contract, etc., and the last "Whereas" clause provides that: "Whereas PENOLA and KENTUCKY wish to cooperate for the purpose of making said products available in said states under the ESSOMARINE trademarks to all who may require them," and then " * * * it is agreed as follows:" There are eighteen paragraphs in the agreement, paragraph 17 reading as follows: "Upon the expiration or termination of this agreement KENTUCKY shall have no further rights to the use of said ESSOMARINE trademarks and shall make no claim thereto or against the use thereof in said States by PENOLA or other duly authorized distributors of said ESSOMARINE products."

The record shows that this contract was thoroughly considered by the parties before it was signed and it is shown also on the face of the contract that it was thoroughly considered by reason of the fact that paragraph 4 as originally proposed was scratched out, except a certain part which was not eliminated and which is partially in handwritten form. Paragraph 8 shows in pen and ink that the word "sufficient" was changed to the word "reasonable". Paragraph 9 was completely eliminated. There are other clauses in the contract which emphasize the fact that these contracts were not entered into until after thorough consideration and study.

The second contract, executed on September 15, 1937, was between Standard Oil Company of New Jersey and Standard Oil Company (Kentucky) and was a contract by which plaintiff's predecessor granted to Kentucky the privilege of using in marketing and advertising the trademark ESSOTANE in the territory where Kentucky now markets petroleum products in connection with the sale of ESSOTANE purchased by Kentucky from Jersey. Paragraph 4 of that contract reads as follows: "KENTUCKY agrees that it will make no objection to the use by JERSEY or those authorized by JERSEY to sell ESSOTANE, or their customers, of said brand ESSOTANE in connection with their sale of ESSOTANE (commercial propane)." Paragraph 8 reads: "KENTUCKY agrees, and agrees to require its sub-distributors to agree, not to claim any right, title or interest in and to said

trademark ESSOTANE, during the life of or after the termination of this agreement."

All these agreements embraced the 5-state area involved here. There have been no written or oral modifications of these contracts. Prior to and since the execution of the 1955 contract plaintiff and defendant have spent millions of dollars advertising ESSO products and emphasizing and promoting the trademark ESSO. The two parties have built up a large good will, both parties having contributed to that, promoting a good will to the word ESSO. This was in accord with the agreements and neither party complained about the advertising until after this lawsuit started. After the lawsuit had started the defendant, Kentucky, admitted it was using ESSO in the 5-state area with the permission of the plaintiff. The advertisements of the defendant covered the various petroleum products and it is shown by the record that Kentucky advertised and sold ESSO aviation gasoline under the 1955 contract.

■■ When the parties are legally competent to contract and the terms of the contract are clear and unambiguous, it is the duty of the Court to enforce the contract as executed by the parties. Here the parties have executed an unambiguous contract, clear in its terms, in language chosen by them, and it is the duty of this Court to declare the rights as between the parties. Hazel Bishop, Inc. v. Perfemme, Inc., 2 Cir., 314 F.2d 399; California Packing Corp. v. Sunmaid Raisin Growers of California, 64 F. 2d 370, 20 CCPA 968. These contracts were lawfully made and are not contrary to public policy. They are valid contracts, expressing in clear terms the stipulations of the contractors and they have a legitimate business purpose. Roth, Inc. v. Esquire, Inc., 2 Cir., 186 F.2d 11. In the Roth case the Court said that the contract provided for the joint use and protection of the trademark in one word "Esquire", the use of which might otherwise well be confusing. In the 1955 contract the parties defendant agreed that there was no confusion between the trademark ESSO and those used by Kentucky. They were in position to know because they had been doing business with each other since about 1928, certainly as far back as the 1934 contract. The issue raised by the answer and counterclaim on confusion will be discussed later herein.

The pleadings in this case show definitely to a large extent, almost exclusively, that this is a contract case, not an action for trademark infringement or unfair competition. The answer and cross claim are based on trademark infringement and unfair competition.

■ Plaintiff is the owner of the trademark ESSO, which was issued November 27, 1923, and has the exclusive right to use it in the territory where it has had its trademark registered and has used it, which is the Jersey territory and, in addition thereto, it has the right under the law to extend the use of its trademark by contract or by purchase, and that, of course, is what the plaintiff is contending and undertaking to do now. The law is well settled that the owner of a trademark does not have the right to extend his trademark into the territory of a competitor, where plaintiff has never done business, without getting the consent and authority of his competitor to extend the use of his trademark into other territory. Denison Mattress Factory v. Spring-Air Co., 5 Cir., 308 F.2d 403; Vermont Maple Syrup Co., Inc. v. F. N. Johnson Maple Syrup Co., 2 Cir., 272 F. 478; E. F. Prichard Co. v. Consumers Brewing Co., 6 Cir., 136 F.2d 512, supra.

■ It is a well settled principle of law that a person may estop himself by contract as well as by conduct or any of the other principles applicable to the doctrine of estoppel. In the present case Kentucky is estopped by the very language and terms of the contract, as well as by its conduct in joining with the plaintiff in advertising and promoting the sale of ESSO products under the trademark ESSO in the 5-state area.

Kentucky was well aware of what it was agreeing to and with full knowledge thereof entered into the contract. No one required it to enter into the contract or made any false representations to it or perpetrated any type of fraud on Kentucky in entering into the contract. Had it not been a mutual contract, fully agreed to after the Missouri case hereinafter to be mentioned, the contract probably would not have been negotiated, but it is plain that each party to the contract desired its rights placed in writing. Without the contract the plaintiff could not have extended the use of the trademark ESSO into the 5-state area under the Missouri case. However, Kentucky had no source of products other than purchasing them from Humble. Humble desired to extend its area and the parties being placed in this situation, with full knowledge of the Missouri case, understandingly entered into the 1955 contract, and by that contract, as heretofore stated, it granted to Humble the complete right to enter the 5-state area under the ESSO trademark, with the full right to the use thereof. Kentucky now is estopped to say that Humble does not have the right to come into the 5-state area, open up its retail stations and otherwise engage in the sale of its petroleum products under the trademark ESSO. Andrew Jergens Co. v. Woodbury, Inc., D.C., 273 F. 952; affirmed, 3 Cir., 279 F. 1016; certiorari denied, 260 U.S. 728, 43 S.Ct. 92, 67 L.Ed. 484; 31 C.J.S. Estoppel, § 55; Holly Hill Citrus Growers v. Holly Hill Fruit Products Co., 5 Cir., 75 F.2d 13, 17.

It is probable, and a fair inference from the testimony in this case, that the 1955 contract would not have been canceled by Kentucky had it not found a new source of supply of petroleum products and Humble would not have canceled the contract as long as it was selling 80% of its products to Kentucky. However, early in 1961, or prior thereto, Kentucky and California merged and California being a producer, would be able to supply all the petroleum products needed by Kentucky or California under the merged corporation and Kentucky let a contract for the construction of a large refinery of petroleum products in Mississippi.

Prior to the filing of this suit Kentucky gave notice to Humble that it would terminate the contract of purchase of products in accord with the terms of that contract, and this, of course, left Humble without any outlet for the 80% of the products that had theretofore been purchased by Kentucky. Humble soon thereafter gave notice to Kentucky that it would begin operations in the 5-state area and began to buy independent filling stations and erect filling stations of their own in this 5-state area and use the trademark ESSO, and on June 14, 1961 filed this suit for a declaratory judgment, praying that the Court declare its rights under the contract, and as hereinbefore shown, alleged that Kentucky had served notice upon it that Kentucky would immediately file suit for infringement and damages growing out of the alleged unlawful use of the word ESSO by Humble. Defendant Kentucky denies that Humble has any right to sell gasoline and contends that the contract covered only lubricating oil, Propane, Butane, oils and greases, and that the contract did not cover gasoline, even though defendant sold aviation gasoline obtained from Humble in the 5-state area under the trademark ESSO.

Kentucky relies largely, as its authority to dismiss the complaint and entertain its counterclaim, on the case of Esso, Inc. v. Standard Oil Company, 8 Cir., 98 F.2d 1, generally and usually referred to as the St. Louis or Missouri case, decided by the Court of Appeals for the Eighth Circuit in 1938. That case is not applicable to the facts of the case now before the Court. In that case no contract was involved, but it grew out of an attempt by Esso, Inc. to enter the area occupied and controlled by Standard of Indiana. Standard Oil of Indiana had made use of the trademarks "S O", "STANDARD OIL CO.", "STANDARD", and "SOCO", and claimed that these trademarks were owned by the Indiana Company in the states where it operated and had actively engaged in business. Also,

that the use of the word ESSO meant the same thing as these other trademarks and, therefore, Esso, Inc. could not come into that territory. The case was filed in Missouri and went up to the Court of Appeals of that Circuit. I think that case has no bearing on the facts of the present case because the fair inference is, from the facts in this case, that Humble and Kentucky, by the 1955 contract, were undertaking to reach an agreement by which Humble could come in and operate in the 5-state area here involved.

There are a number of other Standard Oil Company cases involving various trademarks as a result of the 1911 decision of the Supreme Court which have reached the higher courts. There are at least ten other cases involving some trademarks connected with Standard Oil that have been litigated in various areas of the United States and maybe some others. The ones I know now are: Esso Standard Oil Co. v. Standard Oil Company of New England (D.N.H.1958) 170 F.Supp. 71; Standard Oil Company of Colorado v. Standard Oil Company (10th Cir. 1934) 72 F.2d 524, cert. den. (1934) 293 U.S. 620, 55 S.Ct. 216, 79 L.Ed. 708; Standard Oil Company of New Mexico v. Standard Oil Company of California (10th Cir. 1932) 56 F.2d 973; Standard Oil Company of New York v. Standard Oil Company of Maine (D.Maine 1930) 38 F.2d 677; Standard Oil Company of Maine v. Standard Oil Company of New York (1st Cir. 1930) 45 F.2d 309; Standard Oil Company v. Michie, (E.D.Mo. 1929) 34 F.2d 802; Standard Oil Company v. Standard Oil Company of North Dakota (D.N.Dak.1954) 123 F.Supp. 227; Esso Standard Oil Company v. Standard Oil Company of North Carolina, Incorporated (M.D.N.C.1956) 112 U.S.P.Q. 265; and Esso Standard Oil Company v. Bazerman (E.D.N.Y.1951) 99 F.Supp. 983. These cases are cited, argued and urged by defendant Kentucky as being controlling in the instant case. I cannot agree with this contention.

■ It is a well known principle of law that practically every lawsuit must be decided in accord with its own facts and the applicable law. The case now before the Court presents entirely a different set of facts from those presented in the above styled cases. It is one of the contentions of Kentucky that the reason Humble is attempting to expand its ESSO name into different territory and into territories of the other Standard Oil Companies, is to obtain the advantage of the good will of the Standard Oil name and that if it is permitted to do so, the facts in the present record would leave no doubt that if plaintiff can succeed in this attempt, it will sweep across the country, literally creaming off the top of the good will of every other Standard Oil Company. This argument is not sound under the facts in this case. So far as the record shows, there is only the 5-state area involved and, as heretofore stated, Kentucky is estopped to deny the right of Humble to come into the 5-state area here involved. Humble has contract rights with Kentucky and it would be a clear breach of that contract to deny to Humble the right that Kentucky has conferred upon it.

The fair inference from all the testimony in this case is that Standard Oil of California, one of the largest oil companies in the United States and covering a large area, already is undertaking to expand its operations legally into new territory and Humble, another one of the largest companies in the United States, is undertaking to expand its territory, but only by lawful means.

The basic contentions of defendant are that the use by plaintiff of ESSO as a trademark and trade name in defendant's territory is likely to, and does in fact, cause confusion, and that such use is an infringement of defendant's Standard Oil trademarks and constitutes unfair competition. Kentucky further contends as part of those basic principles, that proof of actual confusion in this case is made and that the likelihood of such confusion should prevent the plaintiff from enforcing its contract. Defendant offered a large amount of testimony along these lines and plaintiff offered counter testi-

mony in the nature of affirmative proof by witnesses who were not confused. Kentucky further contends that likelihood of confusion is established by proof that ESSO sounds like and is derived from the letters "S O", which have long been used by the public as a designation of all Standard Oil Companies, and further contends that ESSO has long been associated with STANDARD OIL and that plaintiff advertised extensively to the public for years that ESSO means STANDARD OIL. In addition thereto, its public reaction test, as well as that there was proof from numerous members of the public who patronized ESSO service stations of Kentucky, and further, that the ESSO identification sign (Id.) signifies the station to the motorist, which is the symbol which attracts him to the station. Kentucky also contends that confusion grew out of the similarity of credit cards which were issued by Standard Oil Company and those issued by Humble; also by some correspondence and by testimony that a station manager of an ESSO service station in Biloxi instructed his employees what to tell customers who came into the station thinking they were dealing with Kentucky; also that the Standard Oil Company color scheme used by plaintiff contributed to confusion. Kentucky also urges and insists that the fact that the defendant has purchased from plaintiff and resold at its service stations and sales organizations lubricating waxes and solvents bearing the ESSO brand does not give plaintiff the right to use that brand in defendant's Standard Oil Company territory independently of defendant and without its permission. Kentucky further contends and urges that the contract of 1955 did not mean, and it was not the intent of the contract, that when the contract was terminated Humble would have the right to use the ESSO trademark for the sale of gasoline in the 5-state area, and under this above mentioned contention it urges the Court that the complaint should be dismissed and the cross complaint sustained.

The test for trademark infringement and unfair competition is whether the alleged offending use is likely to cause confusion, or whether deception will be the probable result of the offender's improper use. It may be said that the general rule is that unfair competition of trademark infringement exists if the marks are "likely" to mislead the ordinary buyer and induce him to purchase the goods of one in the belief that they are those of another. 52 Am. Jur. 600–601, Trademarks, Trade Names, etc., Sec. 128. Also Vol. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition §§ 64–66, pp. 283–285, § 92, pp. 325–333, Abramson v. Coro, Inc., 5 Cir., 240 F.2d 854; Esso, Inc. v. Standard Oil Company, 8 Cir., 98 F.2d 1. In the case of American Photographic Publishing Company v. Ziff-Davis Publishing Company, 7 Cir., 135 F.2d 569, the Court held that when ordinarily prudent buyers are not misled no relief is warranted and none would be granted; that if confusion is more properly attributable to carelessness on the part of the customers, then no complaint can be made of confusion. See also Turner & Seymour Mfg. Co. v. A. & J. Mfg. Co., 2 Cir., 20 F.2d 298, wherein, among other things, the Court said:

"It is not necessary for a merchant to so designate his goods that careless buyers will know by whom they are made and sold. * * *

"Where attention by the purchaser of the article will enable him to at once distinguish one from the other, a court of equity will not interfere. * * * *"

One of the main contentions of the defendant is that the contract of 1955 was not intended by the defendant to convey to the plaintiff the right to use the trademark ESSO independently in defendant's marketing area. With this contention I cannot agree. The contract specifically gave the plaintiff permission to use ESSO in the 5-state area and is clear in its terms; it was thoroughly considered by the parties before its execution and at the time it was executed both parties, Kentucky and Humble,

knew that the good will built up by the trademark ESSO was a valuable asset. They knew that by the St. Louis decision ESSO had been adjudicated to be synonymous with STANDARD OIL; they knew that the plaintiff was the exclusive owner of the trademark ESSO and had the right to contract with defendant for defendant to use that mark in the 5-state area, and they knew that plaintiff did not have the right to use it without the consent of Kentucky, and both parties were represented by eminent counsel, as is shown by this record. With the full knowledge of these important facts, as well as the friendly relationship existing between them, and with the full knowledge of the 1948 decision, they advisedly entered into this contract, the terms of which speak for themselves.

As heretofore stated, Kentucky was entirely a marketing company of petroleum products. Humble was a large producer of petroleum products and for years Kentucky had obtained its supplies of petroleum products from Humble. The trademarks STANDARD OIL and ESSO are well known trademarks, and each one carries a high reputation for production and distribution of high grade petroleum products. By the contract they recognized that Kentucky had marketed products purchased from Esso Standard in this particular area involved and without giving rise to any confusion on these ESSO trademarks with any of KENTUCKY'S trademarks, and agreed that Esso Standard had the right to use the trademark during the pendency of the contract, as well as after its termination, and specifically agreed that Kentucky would so conduct its business as not to impair Esso Standard's ownership or right to use in this particular area, and agreed that they would cooperate in protecting plaintiff's use of the ESSO trademark. I have heretofore stated these facts, but repeat them here for emphasis in showing that they knew exactly what they were agreeing to. The last paragraph stated: "Nothing contained herein shall be construed to limit or restrict the right of KENTUCKY to sell petroleum or other products under trademarks, labels and markings not confusingly similar to these Esso Standard trademarks, labels and markings." This paragraph, of course, was thoroughly considered along with all the others and by its terms reserved to Kentucky the right to sell products under its own trademarks as long as they were not confusing and I am unable to see where the trademark STANDARD OIL would be confused with the word ESSO trademark.

Under this contract Humble has the right to use its trademark ESSO while Kentucky has the right to use its trademarks STANDARD OIL, SO, etc., as they are not confusing and not likely to produce any confusion among the public travelers using due care and observation, and also as long as there are other distinguishing marks on the stations. There have been many, many exhibits showing pictures of the various filling stations used by Humble and those used by Kentucky. Kentucky is prominently identified by its "Id." sign STANDARD OIL or STANDARD OIL COMPANY, or CROWN, while Humble identifies its Esso stations by the use of the trademark ESSO and in large letters placed on its stations: HUMBLE, and in large letters, HAPPY MOTORING. Humble has made no effort to simulate the stations of Standard Oil, but on the contrary has exercised proper care to distinguish its filling stations from Standard Oil. While there is some phonetic similarity between the words ESSO and the trademark S.O., yet the sound when pronounced is not entirely the same. In pronouncing the word ESSO emphasis is on the "ES" and it has a different sound from that when pronouncing or speaking the trademark S.O. or SO, and in looking at them, there is no similarity. The photographs show clearly that a motorist exercising a slight degree of observation can see the STANDARD OIL sign and realize that it is the Standard Oil sign. If he sees the ESSO sign and is really looking for a Standard Oil station, by reasonable observation, as he drives

to the station, he readily can see that it is a Humble station and should not be confused.

Defendant urges that after the execution of the contract that plaintiff did not mention or suggest that the subject matter of the agreement was the right of the plaintiff to use its trademark ESSO independently of defendant, and that plaintiff knew that defendant was selling goods under the ESSO brand and that the naked licensing of the trademark could work an abandonment. Definitely there was no abandonment or any intention to abandon. As a matter of fact, there was no necessity for plaintiff to bring up the discussion of its right to use the trademark ESSO independently, because plaintiff was satisfied to work under the contract as long as Kentucky was getting 80% of its petroleum products from the plaintiff. It is shown in the record that defendant complained to plaintiff that one of plaintiff's distributors in Tennessee was going into Georgia and selling products under the ESSO brand and when Kentucky complained of this, plaintiff wrote to its manager in Tennessee that he must discontinue the use of the ESSO trademark in connection with such sales in Georgia. Also, in 1957 plaintiff's counsel advised its operating people not to use the trademark ESSO in advertising on commercial vehicles passing through the 5-state area, as well as many other statements against interest, all of which I have taken into consideration, but am of the opinion that these statements and occurrences are not sufficient to justify setting aside the contract. Both parties were completely satisfied with the contract until Kentucky decided to merge with California and gave notice of the cancellation of the contract. It was then that this controversy arose, resulting in this lawsuit for a determination of the meaning of the 1955 contract.

Kentucky further urges with emphasis that it was not the intent of the contract to permit plaintiff to come into the 5-state area because of a letter sent by plaintiff to its stockholders in 1960.

In this letter Mr. Rathbone, President of Jersey Company, had this to say: "Were we to use the STANDARD OIL or the ESSO name in *nation wide marketing* (emphasis mine) activities, this would in all likelihood precipitate further controversy with the non-affiliated STANDARD OIL COMPANIES operating in other parts of this country." Even this language does not admit that there would be confusion or infringement, but is an expression of his opinion, with which I agree, that if it was used nationwide it would precipitate a lawsuit, probably several of them, but is not an expression of an opinion or statement of fact that throws any light on the construction of the 1955 contract. This letter was written at a time after Humble and Jersey had consolidated.

There are a number of matters urged by Kentucky, all of which I have considered along with the entire evidence in the case in reaching a construction of the 1955 contract, and my failure to call attention to all of them in detail does not negative the fact that I have considered them thoroughly.

There are two contentions which I should discuss. One is that Kentucky urges that there was no consideration for the contract. With this I cannot agree. There was a substantial consideration in that the plaintiff permitted Kentucky to use the trademark ESSO in the area and spent large amounts of money along with Kentucky in advertising the products, which was a very valuable right to the defendant. The promises were mutual and each party profited millions of dollars by virtue of the contract. The consideration was ample. The next contention that should be discussed is that the testimony in the case shows that defendant's Board of Directors was not advised by Mr. Violette that the agreement had been executed, thereby giving the Board of Directors an opportunity to pass on the wisdom of the contract, and that the burden was upon the plaintiff to require approval of the agreement by the Board of Directors. With this contention I

cannot agree. The testimony shows that the contract was thoroughly discussed, page by page, and was approved by Mr. Violette, President of Kentucky, and by Mr. Scholl, Vice President of Jersey, and this is a matter that was in the general scope of the powers of the President. The entire record shows that Mr. Violette was a very capable executive and highly respected by everyone, and that he and the executives of plaintiff had implicit confidence in each other. There is not a hint in the entire record that Mr. Violette was not capable or was not acting in the best interest of his company, and that at that time he was acting within the general powers of the President of a corporation. The record further shows that in 1954 Mr. R. H. Scholl, who was General Counsel for plaintiff, went to Louisville to discuss the problem with Mr. Middleton and Mr. Violette. The record shows that other correspondence and meetings occurred, but that finally the contract was drafted by Mr. Paust and sent to Kentucky, and that soon thereafter it was gone over and studied paragraph by paragraph, and then signed on the 27th of January, 1955 by Mr. Scholl and Mr. Violette, and the contract is headed as hereinbefore noted *"TRADE MARK" "LICENSE AGREE-MENT"*. The caption above of the contract shows that the subject matter of the contract, to a large extent, was that of expressing in writing the intent of Humble and Kentucky concerning the various trademarks of the two companies, and more than once in the contract it is agreed that plaintiff has the right to use its trademark in the 5-state area, naming the area, during the existence of the contract and then after its termination. Mr. Violette is dead, as well as Mr. Middleton and some of the others who participated in the discussion of the contract. While the court must construe such a contract in the light of all the surrounding circumstances, yet it cannot change the language chosen by the parties who executed it.

The canons of construction of contracts are set forth in Restatement of Contracts, Section 236(a), (b), (d) and (f) and without quoting them, (a) reads: That an interpretation that gives a reasonable, lawful and effective meaning to all manifestations of intentions is preferred to one which leaves a part of such manifestations unreasonable or unlawful. Certainly, one reading the 1955 contract could not see there is anything unreasonable or unlawful about it. Its intent is clearly expressed. (b) reads: That the principle, apparent purpose of the parties is of great weight in determining the intention of the parties. (d) provides: That where words or other manifestations of intention bear more than one reasonable meaning, then an interpretation is preferred that operates more strongly against the parties from whom they proceed. (f) provides: That where public interest is affected an interpretation is preferred which favors the public. The contract as drawn complies with all of these canons. There is nothing in the contract that is unlawful or contrary to public policy and does not affect the public. It is an agreement between the parties which they have a right to make and the public cannot complain unless such a construction would lead to the confusion of the public. The public, when exercising reasonable diligence and due care, is not likely to be confused by the carrying out of the contract entered into in January, 1955.

On the subject of confusion, while there is testimony that many customers were confused by the use of the trademark ESSO and by the credit cards, yet a large majority of this confusion is brought on by Kentucky in failing to carry out the intent of the contract that it would use its best efforts to prevent confusion from arising from the agreement. It agreed at the time of the writing of the contract that there was no confusion and not likely would there be any. Kentucky should have taken proper steps in its advertising and display of the signs to indicate to the traveling public that it was selling products of Esso Standard Company. This it did not do, but it and plaintiff, both in accord

with the intent of the contract, cooperated in promoting the sales and advertising of ESSO products, but Kentucky did not sufficiently advertise or display signs that it was using ESSO trademark by virtue of a contract. If the owner of a trademark permits another to distribute the goods of the owner, bearing the trademark, in the territory in which the owner's trademark had not theretofore been used, the use of the trademark in such territory by the distributor is for the benefit of the owner of the trademark, and the owner of the trademark is not estopped from selling goods under his trademark or from asserting his right thereto in such territory after the termination of the distributorship. E. F. Prichard Co. v. Consumers Brewing Co., 136 F.2d 512, supra. Kentucky placed its oil racks between the gasoline pumps at practically every filling station, which containers bore the ESSO oval very prominently, and sent advertising of ESSO products to its credit card holders in large numbers. Moreover, it distributed road maps advertising the availability of ESSO products to many persons throughout the country. In the 5-state area on defendant's stations it advertised ESSO products and advertised its automotive and aviation gasoline in radio commercials, as well as in various publications.

 Defendant asserts another contention to the effect that if plaintiff's interpretation of the 1955 agreement is correct, then it is contrary to public policy and violates the criminal laws of the states. The court has considered the contract, the authorities, the evidence and the laws of the five states and is of the opinion that such a contract does not violate the criminal laws of either state and is not a void contract because of the violation of any laws or public policies. There is no intent on the part of plaintiff to deceive the public in disposing of its products under its trademark ESSO. It is doing only that which it has a right to do and doing it in a manner agreed to by the defendant by the contract so many times referred to.

The products it is selling or distributing are products of its own manufacture or production. The use of its trademark is not misleading. Plaintiff is not estopped to deny that ESSO is the equivalent of STANDARD OIL. It is true that ESSO has a semblance of sound to that of "S.O.", but there is no semblance to the naked eye as one drives down the public highways. When he sees the sign of STANDARD OIL he can easily determine whether or not it is an Esso station or a Standard Oil station. If he sees the sign ESSO, then as he approaches the filling station he will see the signs HUMBLE and HAPPY MOTORING and he can easily determine whether or not it is a Standard Oil station or an Esso station.

 Plaintiff was a party to the St. Louis suit where the Court held that ESSO is the equivalent of STANDARD OIL or, vice versa, STANDARD OIL is the equivalent of ESSO, yet the facts in that case, as heretofore discussed, are entirely different from the facts in the present case. It would be true that plaintiff would be estopped by judgment and is estopped by judgment in the Indiana territory, but not in the 5-state area where defendant has consented and agreed that plaintiff was entitled to use its trademark ESSO in the 5-state area. This is a matter of contract and there is nothing contrary to public policy that would prevent the plaintiff and the defendant, for mutual considerations, exchanging the use of their trade names or trademarks. By the terms of the contract Kentucky has consented or given its permission that plaintiff could use its own trademark in the 5-state area.

 Defendant contends that plaintiff's Federal registrations of STANDARD OIL and ESSO should be amended. Defendant is estopped to raise this question because by its contract it agreed that they were valid, legal and properly registered. Defendant is not in position to raise this question. Defendant has used the trademark ESSO in the 5-state area in the sale of ESSO products by virtue of the contract, which it could not

have done had it not been for the contract. Its use over a period of years and its definite agreement that the trademarks were properly and lawfully registered precludes it from now complaining.

In 1954 when Mr. Middleton wrote plaintiff's General Counsel he stated: "When you were here on your very pleasant visit we agreed that it would be better for all concerned if you withdrew your trademark registration STANDARD in the state of Georgia." This was one of the things leading up to the 1955 contract, because on March 25, 1954 plaintiff's General Counsel wrote Mr. Middleton commenting on the substance of the proposed contract as follows: "It was agreed that we would draw up an agreement under which the KENTUCKY COMPANY could further recognize our ownership and right to use the various brands under which our products are now sold. We agree to cancel certain old registrations of the word STANDARD which have been of record for many years under which the KENTUCKY COMPANY markets, even though we have no use of this trademark in those states." The registration of STANDARD was shortly thereafter canceled. Mr. Violette was the proper man of Kentucky to deal with in reducing to writing the accepted understandings. He was thoroughly familiar with all the affairs of Kentucky and the record shows he was a man of strong mind and determination. As shown by the testimony of Mr. Gaylord, of Kentucky, Mr. Violette kept himself very thoroughly informed on every department. The surviving person involved in the final registrations of the 1955 contract is Mr. Paust and Mr. Paust is the one who drafted the contract and sent it to Mr. Middleton for discussion with Mr. Violette. Mr. Paust testified that every clause was discussed in some way,—either they had a question which he answered or Mr. Middleton or Mr. Violette might have asked him something about which he had a comment, but he could not remember the details. The fair inference is that if it had been the intent to limit the phrase "to use"

the trademark in the 5-state area, it would have been so simple to say that they would not have the right to open up filling stations and sell their petroleum products, except on motor oils or greases, or words to that effect, and with the long time opportunity of Kentucky executives and attorneys to study the contract they put no limitation on the words or clause. The record shows that Mr. Middleton and Mr. Violette required no changes in the agreement, although they had had the working draft before them for about ten days.

Wherever it has come to the plaintiff's attention that third parties were using ESSO trademark in the 5-state area it vigorously objected and prosecuted the violations, without Kentucky doing anything with reference to its trademarks, but Kentucky referred them to ESSO.

In the early 1950's, during the widespread use of ESCO by Economy Service Company on identification signs and petroleum products, defendant's counsel, Mr. Dana Brown, wrote Mr. Utley: "You understand, of course, that any action taken in this case must necessarily be taken by ESSO STANDARD OIL COMPANY, the owner of the trade name ESSO. Mr. Middleton referred this matter to ESSO STANDARD OIL COMPANY sometime ago." And the same thing happened with reference to such advertising in the Miami Telephone Book Yellow Pages.

The fair inference from all the testimony is that prior to entering into the contract of 1955 Kentucky feared competition from outside sources coming into the 5-state area under their own legal trademarks and in order to insure a source of supply from the Humble Oil Company, it concluded it would execute a contract with Humble in order to have a supply from Humble. It feared that if Humble should discontinue the supply, then Kentucky would have no source from which it could procure its products. If Kentucky had declined to enter into the contract in 1955 or if Humble had found other outlets for its supplies and refused to sell to Kentucky it would have

been a terrific blow to Kentucky. Kentucky then would have had to shop around for supplies of other producing companies, which companies under their own trademarks could have come into Kentucky's territory. Kentucky not being a producer, was compelled to get its supplies from some source. It could go to Gulf or to American or Shell or any company having a refinery and obtain its supply, but there would be nothing to prevent either of those companies coming into Kentucky's territory under their own trade names, and if such companies did so, then under certain circumstances arising from such a situation, Kentucky's profits could be greatly reduced. However, regardless of what prompted Kentucky and Humble to enter into the contracts, and particularly the 1955 contract, they did enter into it, they chose the language placed in it and consummated it by signing. The enforcement of the contract only brings Humble into the territory as a competitor under its own trademark ESSO and its own name HUMBLE and HAPPY MOTORING or any other of its trademarks containing the word ESSO.

■■■ Humble operating under its trademark ESSO will not be unfair competition since Kentucky has agreed to it, and there will be no confusing of the public as long as each company endeavors to prevent any confusion, and as operated now the confusion is so slight that it is insufficient to overcome the plain meaning of the contract. Kentucky operating under its trademark S.O., SO, KYSO or STANDARD OIL will certainly not be confusing to the public to the extent of causing the public to believe that they are selling ESSO products. Defendant has failed to meet the burden cast upon it to show that its service stations in the area are known and recognized by the distinctive color scheme of predominently red, white and blue in color and that the plaintiff had unfairly competed with it by using an allegedly similar color scheme for its service stations in the 5-state area. The evidence is insufficient to find that Humble adopted a color scheme similar to that of Kentucky, and I find as a fact that there was no intent or purpose by the plaintiff to do this. As a matter of fact, the evidence shows that up until the time the lawsuit was filed, defendant's service stations in some areas were painted a variety of colors other than red, white and blue. On some of its stations they had red, white and green. The color scheme of red, white and blue is used in the 5-state area by other companies as well as by Kentucky and Humble. The photographs in evidence demonstrate clearly that no one could be misled by any color scheme of any company. There is no likelihood that there will be any confusion caused by plaintiff's use of its trademark ESSO for its service stations in the 5-state area, nor any likelihood that any combination of the color scheme of red, white and blue will contribute to any confusion to the traveling motorist who exercises due care to find the products he desires.

■■■ Both plaintiff and defendant contend that the other has come into court with unclean hands and for that reason their complaints should not be entertained by the court. With this I cannot agree. The doctrine of unclean hands does not apply to plaintiff or defendant in this case. The doctrine of unclean hands is enforced by court of equity when the suitor asking for relief has been guilty of intentional conduct so violative of "fundamental conceptions of equity jurisprudence" as to justify a court of equity in refusing to grant the relief sought. 2nd Pomeroy's Equity Jurisprudence, p. 91, Sec. 397 (5th Ed.); 4 Collmann, Unfair Competition and Trademarks, 1747, Sec. 87.1(b) (1) (2d Ed.1950); Coca Cola Co. v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189. This lawsuit is brought by plaintiff by virtue of a contract and it is defended by Kentucky with its contentions and there is nothing in the record to indicate that either one is dealing in bad faith, but the lawsuit was begun and prosecuted in good faith and

Kentucky answered and counterclaimed in good faith.

Kentucky further contends that plaintiff's Federal registrations of STANDARD OIL and ESSO should be amended for the reason that the registrations assert rights to use STANDARD OIL and ESSO throughout the country without any geographic limitation and that false representations were made in the procurement of the registration of these trademarks. With this I cannot agree. There was not any intent to infringe on anyone's trademarks by this registration and for the further reason that Kentucky specifically agreed in its contract of 1955 that all trademarks were valid and properly registered.

The issues in this case, considered in the light of the record as a whole, raise a proper case for a declaratory judgment. Contracts are involved, trademark law is involved, diverse contentions of the parties are involved concerning a very valuable right, and it is appropriate that the parties submit their grievances to the courts for a declaration of the rights of the parties. I am of the opinion, and so find, that the plaintiff is entitled to an adjudication of its rights and that the contract of 1955 is valid, legal and still subsisting, and that the plaintiff has the right to come into the 5-state area involved and use its trademark ESSO in the area and dispose of its petroleum products in wholesale or retail, but that it must exercise care in using it in such way that it will not cause any deception to the public. Using it as it does now, as shown by this record, would not be deception, and further declaring that plaintiff is not and has not been guilty of any deception or unfair competition, nor has it infringed on the trademarks of Kentucky, and that at no time has it had any intent to infringe the trademarks of Kentucky or to engage in any unfair competition, and that the cross claim of Kentucky should be dismissed. Since this is a controversy for a declaratory judgment to declare the rights of each party under the contract, plaintiff should be taxed with all costs that accrue at its instance and defendant should be taxed with all costs that accrue at its instance and no attorneys' fees will be allowed.

In addition to the findings of fact made in the foregoing opinion, I also make the following findings of fact and conclusions of law:

1. Standard Oil Company, defendant-counterclaimant (hereinafter referred to as defendant), is a corporation of the State of Kentucky with its offices and principal place of business located at Starks Building, Post Office Box 1446, Louisville 1, Kentucky. References to plaintiff and defendant include their predecessors, affiliate parent corporations and other subsidiaries thereof.

2. Humble Oil & Refining Company, plaintiff-counterdefendant (hereinafter referred to as plaintiff), is a Delaware corporation with its offices and principal place of business located at 1216 Main Street, Houston, Texas.

3. This is a civil action arising between citizens of different states wherein the amount in controversy exceeds the sum or value of Ten Thousand Dollars ($10,000.00), exclusive of interest and costs, and this action also arises under the trademark laws of the United States, Title 15 U.S.C. § 1051 et seq., and under the Judicial Code, Title 28 U.S.C. § 1338.

4. Defendant is and has long been engaged in the business of leasing, licensing, and operating automotive service stations and in the business of selling gasoline and other petroleum products and motor vehicle services in the States of Mississippi, Alabama, Georgia, Florida, and Kentucky.

5. As of March, 1963, defendant had 8,210 retail outlets, namely, 1,222 in Mississippi, 1,737 in Alabama, 1,923 in Georgia, 1,538 in Florida, and 1,790 in Kentucky.

6. In 1886 defendant adopted the corporate name and business style "Standard Oil Company" and continuously since then defendant has been known by the

trade and public throughout defendant's area as "Standard", "Standard Oil", and "Standard Oil Company."

7. Until 1911, defendant, like the other "Standard Oil" companies, was owned and controlled by plaintiff's parent company, but in 1911 the United States Supreme Court affirmed the decree of dissolution of the "Standard Oil" trust (221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619).

8. Like all the other non-affiliated "Standard Oil" companies, defendant, in addition to its use of "Standard Oil Company", "Standard Oil" and "Standard", has for many years used, and now uses, abbreviations and derivations of "Standard Oil" in the conduct of its business such as "SO", "SOCO", "SOKY", "KY SO", and "KYSO", but not to the same extent as "STANDARD OIL".

9. The service stations which defendant leases, licenses and operates in its area, and the products and services at said stations, are identified and known by defendant's "Standard Oil" names, service marks and trademarks.

10. Defendant's sales of services, gasoline and other petroleum products have been under defendant's "Standard Oil" names, service marks and trademarks and said sales have been in large and substantial amounts continuously and annually for many years past and have totaled many billions of dollars in value. However, by contracts with plaintiff it has used plaintiff's trademark ESSO in the 5-state area.

11. Defendant's sales of gasoline and other petroleum products exceed that of any other marketer in defendant's area.

12. Defendant, since long prior to 1920, has developed, acquired and maintained a good will of great value in its area, said good will being represented, identified and symbolized by defendant's "Standard Oil" names, service marks and trademarks.

13. Defendant has continuously and extensively advertised and promoted its "Standard Oil" services, service stations, gasoline and other petroleum products throughout its area in various media with large and substantial expenditures amounting to many millions of dollars. Since the 1955 contract plaintiff and defendant have advertised plaintiff's trademark ESSO and both have contributed largely to building up the good will.

14. In 1948, in order to achieve maximum publicized association of "Standard Oil" with "Esso", plaintiff changed its name from "Standard Oil Company of New Jersey" to "Esso Standard Oil Company" and plaintiff continued to market in its area under the name of "Esso Standard", either as a corporate name or as a division name, until after the commencement of this action by plaintiff.

15. Plaintiff marketed and advertised under the name "ESSO STANDARD" from 1948 until after the commencement of this action during which time plaintiff continuously associated ESSO with STANDARD OIL on its service station identification signs reading "Standard ESSO Dealer" and on radio and television programs.

16. For a while plaintiff advertised on radio, television and in other media that "Esso Is Standard Oil" and that "Esso Means Standard Oil" as illustrated by large billboards erected by plaintiff during the years 1946 through 1951 reading "Welcome To Tennessee Where Esso Means Standard Oil", "Welcome To Louisiana Where Esso Means Standard Oil" at state entrances on some highways leading out of the 5-state area into plaintiff's contiguous "Standard Oil" area.

17. Following the dissolution of the "Standard Oil" combine in 1911 there developed a custom and practice in the industry whereby each non-affiliated "Standard Oil" company used non-Standard Oil names and trademarks when marketing in the "Standard Oil" area of another.

18. Plaintiff has obtained and maintained the following registrations of the trademarks STANDARD, STANDARD OIL and ESSO in the United States Pat-

ent Office, none of said registrations being limited to areas of plaintiff's use:

| Trademark | Reg. No. |
|---|---|
| STANDARD | 155,910 |
| STANDARD BAR & CIRCLE | 224,804 |
| STANDARD | 160,350 |
| STANDARD BAR & CIRCLE | 211,361 |
| STANDARD BAR & CIRCLE | 227,457 |
| STANDARD BAR & CIRCLE | 227,458 |
| STANDARD BAR & CIRCLE | 228,002 |
| STANDARD OIL COMPANY (NEW JERSEY) | 154,846 |
| STANDARD OIL COMPANY (NEW JERSEY) | 155,909 |
| STANDARD OIL COMPANY (NEW JERSEY) | 155,911 |
| STANDARD OIL COMPANY (NEW JERSEY) | 160,347 |
| STANDARD OIL COMPANY OF NEW JERSEY | 336,988 |
| STANDARD OIL COMPANY OF NEW JERSEY | 337,835 |
| STANDARD OIL COMPANY OF NEW JERSEY | 338,114 |
| STANDARD OIL COMPANY OF NEW JERSEY | 338,892 |
| ESSO CARE SAVES WEAR | 398,713 |
| ESSO | 347,466 |
| ESSO | 354,294 |
| ESSO & Design | 353,972 |
| ESSO & Design | 347,467 |
| ESSO | 347,535 |
| ESSO | 341,347 |
| ESSO | 282,257 |
| ESSO | 280,830 |
| ESSO | 258,648 |
| ESSO | 220,294 |
| ESSO | 176,408 |

19. Prior to 1932 defendant marketed certain branded motor oils purchased from plaintiff in containers bearing plaintiff's STANDARD OIL "Bar and Circle" trademark (which trademark was registered in the Patent Office by plaintiff).

20. Plaintiff has used its trademark ESSO, or words containing ESSO, for many years in its original eighteen-state "Standard Oil" area, but plaintiff's use of ESSO in said area is long subsequent to defendant's use of its STANDARD OIL names and trademarks in defendant's area.

21. In the early 1950's, when defendant began canning and packaging lubricants which defendant purchased in bulk from plaintiff, plaintiff grew concerned that its rights in its various trademarks, including ESSO and words containing ESSO, might conceivably be invalidated unless it provided for, and exercised, sufficient supervision and control over defendant's use of said trademarks in defendant's new canning and packaging operation.

22. In 1958, immediately following defendant's objection to plaintiff's use of ESSO on cans of FLIT insecticide marketed by plaintiff independently in defendant's area, plaintiff withdrew its corporate qualification of "Esso, Inc." in each state of the 5-state area and discontinued use of "ESSO" in any respect on all new FLIT packages and containers and in all of its FLIT advertising in the 5-state area.

23. At the time of plaintiff's reorganization in 1960 plaintiff applied its corporate signature "Humble Oil & Refining Company" to cans of ESSO motor oil shipped to defendant in an attempt on the part of plaintiff to identify ESSO with "Humble Oil" in defendant's area rather than with "Standard Oil", but defendant observed this change in the packaging and promptly objected since defendant did not wish to promote a name in its area which, unlike ESSO, defendant expected plaintiff to use some day when marketing independently in defendant's area.

24. Both plaintiff and defendant have zealously policed their names and trademarks against infringements.

25. Some independent dealers of defendant have displayed homemade signs at their stations advertising the fact that they honor "Esso credit cards" or that they sell "Esso motor oil", and in a few instances said dealers have displayed the word ESSO in unnecessarily large letters.

26. Immediately following the filing of the present action for declaratory judgment, plaintiff proceeded with the opening of ESSO stations in the 5-state area and changed its "OKLAHOMA" stations in defendant's area to "ESSO" stations.

27. The pole or "ID" sign near the highway, road or street is the principal means of identification of service stations and it is the sign the public principally relies upon when seeking the station of a particular company.

28. By the three contracts the parties intended and agreed that plaintiff should have the right to sell petroleum products of any and every kind, including marine lubricants, commercial propane, oils and greases of various types, and gasoline, under the trademark ESSO and other trademarks which include ESSO in the 5-state area directly and not through defendant.

29. Plaintiff is the owner of the following United States trademark registrations, among others, for petroleum products of various kinds, which were issued by the United States Patent Office:

| Trademark | Registration Number | Date of Issuance |
|---|---|---|
| ESSO | 176,408 | November 27, 1923 |
| ESSOLUBE | 285,285 | July 21, 1931 |
| CYLESSO | 305,424 | August 15, 1933 |
| VALESSO | 305,428 | August 15, 1933 |
| TERESSO | 305,438 | August 15, 1933 |
| ESSOMARINE | 307,919 | November 14, 1933 |
| ESSO-MAR | 316,711 | September 4, 1934 |
| SOLVESSO | 318,870 | November 6, 1934 |
| SOLVESSO | 318,875 | November 6, 1934 |
| ESSOTEX | 323,839 | May 7, 1935 |
| ESSOTEX | 324,244 | May 14, 1935 |
| SOLVESSO | 324,419 | May 21, 1935 |
| ESSOROD | 325,486 | June 25, 1935 |
| SPINESSO | 325,863 | July 9, 1935 |
| ESSOTANE | 331,486 | January 7, 1936 |
| ESSO in Oval | 347,466 | June 29, 1937 |
| ESSO in Oval | 347,467 | June 29, 1937 |

30. United States trademark registrations of ESSO, including Nos. 176,408, 347,466 and 347,467, which are specifically set forth in the 1955 contract, have been renewed in the name of plaintiff and are now owned by plaintiff. Registration No. 176,408 covers all of the products which are described as follows:

"REFINED, SEMIREFINED AND UNREFINED OILS MADE FROM PETROLEUM, BOTH WITH AND WITHOUT ADMIXTURE OF ANIMAL, VEGETABLE OR MINERAL OILS FOR ILLUMINATING, BURNING, POWER, FUEL AND LUBRICATING PURPOSES, AND GREASES."

Registrations Nos. 347,466 and 347,467 both also cover, respectively:

"REFINED, SEMIREFINED AND UNREFINED OILS MADE FROM PETROLEUM, BOTH WITH AND WITHOUT ADMIXTURE OF ANIMAL, VEGETABLE OR MINERAL OILS, FOR ILLUMINATING, BURNING, POWER, FUEL, AND LUBRICATING PURPOSES, AND LUBRICATING GREASES."

31. Plaintiff is the owner of the following trademark registrations for petroleum products of various kinds which were issued by the Department of State of the State of Mississippi:

| Trademark | Date of Issuance |
| --- | --- |
| ESSO | March 10, 1928 |
| ESSO | July 1, 1938 |
| ESSO in Oval | July 1, 1938 |
| ESSOTANE | July 1, 1938 |

The goods for which ESSO was registered were not described in the registration of March 10, 1928.

In the registration of July 1, 1938, ESSO was registered for "fuel and lubricating purpose, and petroleum products in general", which cover gasoline; and a renewal of the said registration, to wit, that of March 5, 1963, specifically includes gasoline.

Likewise, in the registration of July 1, 1938, ESSO in Oval was registered for "fuel and lubricating purposes, and petroleum products in general", which cover gasoline; and both renewals of the said registration, to wit, those of April 15, 1953, and March 6, 1963, respectively, specifically include gasoline.

32. Plaintiff is the owner of the following trademark registrations for petroleum products of various kinds which were issued by the Department of State of the State of Alabama:

| Trademark | Date of Issuance |
| --- | --- |
| ESSO | January 24, 1928 |
| ESSOLUBE | January 23, 1935 |
| ESSOTANE | September 11, 1937 |

The foregoing registrations, for which no renewals are necessary, do not describe the goods for which the respective marks thereof are registered.

33. Plaintiff is the owner of the following trademark registrations for petroleum products of various kinds which were issued by the Department of State of the State of Florida:

| Trademark | Date of Issuance |
| --- | --- |
| ESSO | December 1, 1928 |
| ESSOLUBE | January 21, 1935 |
| ESSOTANE | September 11, 1937 |

The goods for which ESSO was registered were not described in the registration of December 1, 1928. However, in the renewal of the said registration, to wit, that of February 25, 1958, the goods described include "oils and greases"; and, since gasoline is an oil made from petroleum for power or fuel purposes, the Court finds that the goods described in the said renewal cover gasoline.

34. Plaintiff is the owner of the following trademark registration for petroleum products of various kinds which was issued by the Department of State of the State of Georgia:

| Trademark | Date of Issuance |
| --- | --- |
| ESSO | November 16, 1928 |

The goods for which ESSO was registered in the registration of November 16, 1928 are described as follows:

"The class of merchandise upon which the same has been and/or is to be used is:—Refined, semirefined and unrefined hydrocarbons, liquid gaseous and solid, both with and without admixture of animal, vegetable and/or other mineral substances, for illuminating, burning, fuel, power, solvent, and lubricating purposes, including greases and other petroleum products and derivatives of various kinds, including asphaltic products."

The Court finds that the goods for which ESSO was registered in the said registration cover gasoline.

35. Plaintiff is the owner of the following trademark registrations for petroleum products of various kinds which were issued by the Department of State of the State of Kentucky:

| Trademark | Date of Issuance |
| --- | --- |
| ESSO | December 3, 1927 |
| ESSOLUBE | January 18, 1935 |
| ESSOLENE | January 18, 1935 |
| ESSOTANE | September 10, 1937 |

The goods for which ESSO was registered in the registration of December 3, 1927 are described as follows:

"Oils, compounds and mixtures in tins, bottles, siphons, kegs, boxes, or drums".

The goods for which ESSOLENE was registered in the registration of January 18, 1935 are described as follows:

"Oils, compounds and mixtures in bottles, siphons, pumps, tins, kegs, boxes, or drums".

The Court finds that the goods for which ESSO and ESSOLENE were registered in the said two registrations, respectively, which do not require renewal, cover gasoline.

36. Plaintiff is the owner of the trademark ESSO and other trademarks which include ESSO for petroleum products. Defendant has admitted it has no right, title or interest in or to such trademarks, and has used such trademarks in the five-state area only by authorization or permission of plaintiff.

37. Defendant had actual knowledge of plaintiff's Florida registration of the trademark ESSO for petroleum products at least as early as 1940 and of plaintiff's United States and Mississippi registrations of the trademark ESSO and other trademarks which include ESSO for petroleum products at least by 1950. Defendant also had learned at least by 1950 that one of the said Mississippi trademark registrations had been in full force and effect since 1928. At no time did defendant object to any of the said trademark registrations or plaintiff's maintenance thereof, although in 1953 defendant did request plaintiff to cancel plaintiff's Georgia registration of STANDARD and plaintiff did so in 1954.

38. Since at least 1932, defendant has been distributing in the five-state area a wide variety of plaintiff's petroleum products bearing plaintiff's trademark ESSO or other trademarks which include ESSO which defendant has been purchasing from plaintiff. The petroleum products bearing the trademark ESSO or other trademarks which include ESSO so purchased and distributed by defendant have included lubricating oils and greases of various types, aviation gasoline, solvents, waxes, protective coatings, industrial, marine, specialty and incidental oils, and also insecticides, propane and butane.

39. Defendant has repeatedly acknowledged that it has been a distributor in the five-state area of plaintiff's petroleum products bearing plaintiff's trademark ESSO or other trademarks which include ESSO, and has consistently recognized that plaintiff is the owner of the ESSO trademarks for petroleum products. Defendant has not claimed any rights in the trademark ESSO or other trademarks which include ESSO, and has admitted that it cannot use the ESSO trademarks without authorization or permission from plaintiff.

40. Containers for the petroleum products sold by defendant which bore plaintiff's trademark ESSO or other trademarks which include ESSO also bore the phrase "Distributed by Standard Oil Company (Kentucky)" or "Standard Oil Company (Kentucky) Distributor" or comparable language. Whatever deviation occurred from this practice was a matter of inadvertence.

41. Since a time long prior to the date of the commencement of this action, plaintiff has been and is now advertising its products bearing its ESSO trademarks in various consumer and trade publications circulating in the five-state area. Plaintiff has also advertised and is now advertising its products bearing its ESSO trademarks in newspapers circulating in the five-state area and in radio and television broadcasts in the five-state area. Plaintiff's advertising of its products bearing its ESSO trademarks in the five-state area has been extensive and widespread and the amount of money which plaintiff has spent on such advertising has been substantial.

42. Defendant has advertised plaintiff's petroleum products bearing the trademark ESSO or other trademarks which include ESSO which it purchased from plaintiff and sold in the five-state area in various trade publications, newspapers, radio broadcasts, highway billboards, point of sale displays, and through other means in the five-state area. Such advertising by defendant of

plaintiff's petroleum products bearing the trademark ESSO or other trademarks which include ESSO in the five-state area has been appreciable.

43. As a result of plaintiff's advertising of its trademark ESSO and other trademarks which include ESSO in the five-state area and defendant's advertising and sales of plaintiff's petroleum products bearing the said trademarks in the five-state area, a substantial good will and reputation attaches to the mark ESSO in the five-state area. The mark ESSO has acquired secondary meaning in the five-state area in that the trade and purchasing public believe that petroleum products upon or in connection with which the mark ESSO is used are products of plaintiff. When plaintiff began to advertise, offer for sale and sell its petroleum products bearing the trademark ESSO and other trademarks which include ESSO in the five-state area directly, it did not intend to trade upon the good will attaching to any of the defendant's names, trademarks or service marks, or of any so-called abbreviations or derivations thereof, but, instead, merely intended to take advantage of the good will which had come to attach to its trademark ESSO and other trademarks which include ESSO in the five-state area as a result of the distributor relationship which has long existed between plaintiff and defendant, and to utilize the trademarks which would enable it to compete in the most effective manner with other oil companies in the said area.

44. Defendant has advertised ESSO aviation gasoline in the five-state area through various media, including radio commercials, newspapers, ticket envelopes distributed by Delta Airlines in 1955 and 1956, flight calculators and give-away articles, identification signs on pumps, windsocks displayed at airports, and decalcomanias attached to structures of servicing equipment at airports. In addition, plaintiff has advertised ESSO aviation gasoline in trade publications circulating in the five-state area, and, at defendant's request, plaintiff has been distributing to specific individuals in the five-state area a publication entitled "ESSO Air World" since 1954 and a publication entitled "ESSO Co-Pilot" since long before that year.

45. Since at least 1934, defendant has been and is now selling large quantities of ESSO aviation gasoline or ESSO turbo fuel to various airlines in the five-state area, pursuant to contracts with such airlines in which defendant has been either a contracting party or a supplying company. The brand of aviation fuel provided for in the said contracts and actually received by the said airlines from defendant in the five-state area according to the terms of the said contracts was and is ESSO. Defendant has purchased all of such ESSO aviation fuel which it has sold to the said airlines from plaintiff.

46. Gasoline and lubricating oils and greases are generally found in the "line" of the same producer and ordinarily are sold through the same channels of trade and under the same circumstances and conditions to the same class of purchasers.

## CONCLUSIONS OF LAW

1. This is a civil action brought under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, for a declaration and judgment as to plaintiff's rights in an actual controversy between plaintiff and defendant within the jurisdiction of this Court. A justiciable controversy exists between plaintiff and defendant.

2. The jurisdiction of this Court rests upon the ground that this is a civil action arising between citizens of different states wherein the amount in controversy exceeds the sum or value of ten thousand dollars ($10,000.), exclusive of interest and costs, and also upon the ground that this civil action arises under the Trademark Laws of the United States, viz., the Trademark Act of July 5, 1946, 60 Stat. 427, 15 U.S.C. § 1051 et seq., and under the Judicial Code, 28 U.S.C. § 1338.

3. This Court has jurisdiction of the parties and the subject matter of the action.

4. As the successor corporation to Penola, Inc., Standard Oil Company of New Jersey and Esso Standard Oil Company, respectively, plaintiff is a party with defendant to each of the three contracts, and defendant is bound to plaintiff according to the terms of each thereof.

5. The three contracts had a legitimate business purpose and are not contrary to public policy.

6. The three contracts expressly define the rights and obligations of the parties, and, therefore, such contracts rather than general principles relating to unfair competition, must govern. This controversy is a contract action and not a trademark action, and, whatever the applicable law might be in the absence of the three contracts, is to be determined according to the law of contracts and not according to the law of trademark infringement or unfair competition.

7. The three contracts are complete and unambiguous and their meaning is plain, and, consequently, no construction or interpretation thereof is required. The intention of the parties thereto and the extent of the rights and obligations defined therein must be ascertained only from the language of the contracts, and the express terms thereof may not be varied, contradicted or defeated by any of the extrinsic evidence which defendant has offered. However, the situation of the parties at the time of making the contract, the surroundings, circumstances and the purpose of the contract may be considered in determining the intent of the language used.

8. Under the three contracts, plaintiff has the right to sell, offer for sale and advertise petroleum products of any and every kind, including marine lubricants, commercial propane, oils and greases of various types, and gasoline, under the trademark ESSO and other trademarks which include ESSO in the five-state area directly and not through defendant.

9. Under the three contracts, plaintiff is not estopped from selling petroleum products of any and every kind under the trademark ESSO or other trademarks which include ESSO in the five-state area directly and not through defendant or from asserting its exclusive rights in and to the use of the said trademarks in the said area.

10. The sale, offering for sale or advertising by plaintiff of petroleum products of any and every kind under its trademark ESSO or any of its other trademarks which include ESSO in the five-state area directly and not through defendant does not constitute a breach of any of the three contracts.

11. Since the petroleum products for which the trademark ESSO is registered in United States trademark registrations Nos. 176,408, 347,466 and 347,467, which are specifically set forth in the 1955 contract, cover gasoline, the 1955 contract covers the trademark ESSO for gasoline.

12. Under the three contracts defendant is estopped from questioning plaintiff's right to sell, offer for sale or advertise petroleum products of any and every kind under the trademark ESSO or other trademarks which include ESSO in the five-state area directly and not through defendant.

13. Under the three contracts defendant is estopped from questioning plaintiff's ownership of the trademark ESSO or other trademarks which include ESSO or plaintiff's exclusive rights in and to the use of the said trademarks in the five-state area.

14. Defendant has no right or privilege to sell, offer for sale or advertise petroleum products of any kind under the trademark ESSO or any other trademark which includes ESSO, except as it is expressly authorized or permitted to do so in the five-state area pursuant to the terms and conditions of the three contracts.

15. Under the three contracts defendant has not acquired any right, title, privilege or any other interest in or to

plaintiff's trademark ESSO or other trademarks which include ESSO, and, at the termination of the said contracts, defendant's authorization or permission to use any of the said trademarks terminates.

16. The legal effect of the three contracts is that any rights which are created in the trademark ESSO or other trademarks which include ESSO by defendant's use thereof in the five-state area, pursuant to the terms and conditions of the said contracts, inures to the benefit of and constitutes in law use by plaintiff.

17. The word ESSO was a good and valid common law trademark of plaintiff for petroleum products of various kinds prior to 1932 and meant to the trade and to the purchasing public that the petroleum products upon or in connection with which it was used were manufactured and/or sold by plaintiff.

18. The word ESSO has continued to be, from prior to 1932 to date, and now is a good and valid common law trademark of plaintiff for such petroleum products as were then manufactured and/or sold by plaintiff and for such additional petroleum products as have from time to time been added to the "line" of goods manufactured and/or sold by plaintiff in the course of the natural expansion of its business.

19. The following United States trademark registrations are all good, valid, presently subsisting and uncancelled:

| Trademark | Registration Number | Date of Issuance |
|---|---|---|
| ESSO | 176,408 | November 27, 1923 |
| ESSOLUBE | 285,285 | July 21, 1931 |
| CYLESSO | 305,424 | August 15, 1933 |
| VALESSO | 305,428 | August 15, 1933 |
| TERESSO | 305,438 | August 15, 1933 |
| ESSOMARINE | 307,919 | November 14, 1933 |
| ESSO-MAR | 316,711 | September 4, 1934 |
| SOLVESSO | 318,870 | November 6, 1934 |
| SOLVESSO | 318,875 | November 6, 1934 |
| ESSOTEX | 323,839 | May 7, 1935 |
| ESSOTEX | 324,244 | May 14, 1935 |
| SOLVESSO | 324,419 | May 21, 1935 |
| ESSOROD | 325,486 | June 25, 1935 |
| SPINESSO | 325,863 | July 9, 1935 |
| ESSOTANE | 331,486 | January 7, 1936 |
| ESSO in Oval | 347,466 | June 29, 1937 |
| ESSO in Oval | 347,467 | June 29, 1937 |

20. The following trademark registrations issued by the Department of State of the State of Mississippi are good, valid, presently subsisting and uncancelled:

| Trademark | Date of Issuance |
|---|---|
| ESSO | March 10, 1928 |
| ESSO | July 1, 1938 |
| ESSO in Oval | July 1, 1938 |
| ESSOTANE | July 1, 1938 |

21. The following trademark registrations issued by the Department of State of the State of Alabama are good, valid, presently subsisting and uncancelled:

| Trademark | Date of Issuance |
|---|---|
| ESSO | January 24, 1928 |
| ESSOLUBE | January 23, 1935 |
| ESSOTANE | September 11, 1937 |

22. The following trademark registrations issued by the Department of State of the State of Florida are good, valid, presently subsisting and uncancelled:

| Trademark | Date of Issuance |
| --- | --- |
| ESSO | December 1, 1928 |
| ESSOLUBE | January 21, 1935 |
| ESSOTANE | September 11, 1937 |

23. The following trademark registration issued by the Department of State of the State of Georgia is good, valid, presently subsisting and uncancelled:

| Trademark | Date of Issuance |
| --- | --- |
| ESSO | November 16, 1928 |

24. The following trademark registrations issued by the Department of State of the State of Kentucky are good, valid, presently subsisting and uncancelled:

| Trademark | Date of Issuance |
| --- | --- |
| ESSO | December 3, 1927 |
| ESSOLUBE | January 18, 1935 |
| ESSOLENE | January 18, 1935 |
| ESSOTANE | September 10, 1937 |

25. Even had there been no contracts between the parties, defendant is estopped, by reason of the distributor relationship, from asserting that plaintiff may not, at the termination of the distributor relationship, use its trademark ESSO or other trademarks which include ESSO in the five-state area, or sell, offer for sale or advertise petroleum products of any kind under its said trademarks in the said area, directly and not through defendant.

26. Plaintiff's rights in and to its trademark ESSO are not limited to the products upon or in connection with which the said trademark has actually been used but extend to all products which would reasonably be attributed by the purchasing public to plaintiff if sold under the trademark ESSO or a similar mark. Lubricating oils and greases and gasoline are products of such a nature and are sold under such circumstances and conditions that, if sold under the trademark ESSO or other trademarks which include ESSO, would likely be thought by the purchasing public to originate from the same source, i. e., plaintiff. Purchasers in the five-state area who are familiar with plaintiff's lubricating oils and greases sold under the trademark ESSO or other trademarks which include ESSO would likely believe that gasoline sold under the trademark ESSO was also a product of plaintiff. Therefore, even if the 1955 contract did not cover ESSO for gasoline (which, as this Court has concluded in Paragraph 11 above, it does), plaintiff's right to use the trademark ESSO or other trademarks which include ESSO in the five-state area directly and not through defendant would extend to gasoline.

27. The petroleum products which plaintiff has the right to sell, offer for sale and advertise under the trademark ESSO and other trademarks which include ESSO in the five-state area directly and not through defendant include lubricating oils and greases and gasoline. Therefore, since the said products are ordinarily purchased by the motoring public and others at service stations which are, and are understood by the motoring public and others to be, the normal and usual outlets for the retail sales of such products, it necessarily follows that plaintiff has the right to display its trademark ESSO upon identification signs, otherwise known as "I D" signs, erected at the premises of service stations where its ESSO lubricating oils and greases and gasoline are sold, in order that the motoring public and others who may be seeking the said ESSO products may be apprised of the fact that the said ESSO products are on sale at such service stations.

28. Defendant and its officers, directors, servants, agents and employees, successors and assigns, and any and all persons acting by or under its authority or consent or in privity with it, shall be permanently enjoined and restrained from interfering in any manner with

642

plaintiff's exercise of its right to sell, offer for sale and advertise petroleum products of any and every kind under its trademark ESSO or any of its other trademarks which include ESSO in the five-state area directly and not through defendant.

29. Plaintiff's name HUMBLE and its trademark ESSO, together with the words "Happy Motoring", are prominently displayed in large-sized letters on the buildings or premises of all of plaintiff's service stations. Defendant's name and trademark STANDARD or STANDARD OIL and trademark CROWN are conspicuously displayed on the buildings or premises of all of defendant's service stations. Neither the word STANDARD nor the word CROWN appears anywhere on or near any of plaintiff's service stations.

30. Whatever use, if any, defendant has made of the designation "SO" or "S.O." in the five-state area has been insignificant and transitory, with no effect whatsoever upon the market, and entirely insufficient to establish trademark rights in the said designation. In the absence of evidence of substantial use by defendant of the designation "SO" or "S.O.", defendant has failed to prove that it or its products are known to the purchasing public in the five-state area by the said designation.

31. Defendant failed to prove its claim that its service stations in the five-state area are known to and recognized by the purchasing public by a distinctive trade dress, color scheme and general appearance, which is predominantly red, white and blue in color. The evidence shows that some of defendant's service stations were painted in a variety of colors other than red, white and blue. In addition, as the evidence further demonstrates, the red, white and blue color scheme is in such widespread use for the service stations of others in the five-state area that defendant's claim that such color scheme identifies its service stations in such area is entirely lacking in substance.

32. The trade dress, color scheme and general appearance, of plaintiff's service stations in the five-state area and of plaintiff's products sold at such service stations, either alone or in combination with plaintiff's use of ESSO at such service stations, have not resulted and are not likely to result in confusion, mistake or deception of the purchasing public, and have not caused and are not likely to cause any of the purchasing public to assume erroneously that plaintiff's service stations, services, gasoline and other petroleum products, in the five-state area are the service stations, services and products of defendant, or are in some way legitimately related to, authorized by, or connected with defendant.

33. A considerable number of defendant's dealers have erected ESSO signs at their STANDARD or STANDARD OIL service stations in which the word ESSO has generally been prominently displayed. In some instances, the word ESSO has been displayed alone, and, in other instances, the word ESSO has been accompanied by language indicating that ESSO credit cards were honored or ESSO motor oil was sold at such service stations. Such accompanying language, where present, has, with few exceptions, been in letters appreciably smaller than the word ESSO, and, in many instances, has been visible only upon close inspection. In several instances, the word ESSO has been displayed in letters which were larger than the words STANDARD OIL appearing on the identification or "ID" signs of the said service stations.

34. Defendant has failed to sustain its burden of proving that an appreciable number of ordinary purchasers buying petroleum products in the ordinary way in the five-state area are likely to be confused, mistaken or deceived by plaintiff's use of its trademark ESSO into believing that plaintiff's service stations, services and products, are the service stations, services and products of defendant or of defendant's dealers.

35. The bulk of the confusion testified to by defendant's witnesses was not occa-

sioned by any wrongful use of ESSO by plaintiff or by any other wrongful conduct on the part of plaintiff, but, on the contrary, is attributable to one or more of the following causes:

(A). Some of the confusion testified to by defendant's witnesses resulted from the exercise by plaintiff and defendant of their respective legal rights under the three contracts. These contracts were fully intended and carefully prepared, and were entered into in good faith by parties who were completely cognizant of the trade and of the market practices involved.

(B). Some of the confusion testified to by defendant's witnesses resulted from the fact that defendant has been for many years and still is a distributor of plaintiff's ESSO petroleum products in the five-state area, and some members of the purchasing public have continued to associate such ESSO petroleum products and the trademark ESSO with defendant. Some members of the purchasing public have not yet become aware of the fact that plaintiff and defendant are now in competition with each other and that the distributor relationship will eventually terminate, and it is likely that some time will elapse before such members of the purchasing public become aware of such fact. Defendant has not made any effort to apprise the public of the eventual termination of the distributor relationship and to avoid any possibility of confusion.

(C). Some of the confusion testified to by defendant's witnesses resulted from the fact that defendant's credit cards were and are honored at plaintiff's HUMBLE service stations, and plaintiff's credit cards were and are honored at defendant's STANDARD or STANDARD OIL service stations, pursuant to a legitimate reciprocal business arrangement.

(D). Some of the confusion testified to by defendant's witnesses resulted from the ESSO signs which a considerable number of defendant's dealers erected at their STANDARD or STANDARD OIL service stations in which the word ESSO usually appeared in large letters and the accompanying language, if any, respecting the honoring of credit cards or the selling of motor oil, with few exceptions, appeared in smaller letters, which, in many instances, were visible only upon close inspection. Defendant has done nothing effective to compel its dealers to discontinue such uses of ESSO at their STANDARD or STANDARD OIL service stations.

(E). Some of the confusion testified to by defendant's witnesses resulted from the mistaken belief or notion entertained by many members of the public that a connection of some kind exists among all "Standard Oil" companies. There is no evidence of any kind which indicates that plaintiff either fostered or encouraged such a belief or notion on the part of the public. This mistaken belief or notion likely stems from the fact that the public generally does not know the details of the Supreme Court decree of 1911 (221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619), which dissolved the "Standard Oil Trust" but did not require any of the separate "Standard Oil" companies which thereafter operated in different geographic areas to discontinue use of the "Standard Oil" name.

■ 36. Defendant produced at the trial 26 witnesses from the five-state area who testified in substance that they were confused into believing that plaintiff's HUMBLE service stations were the STANDARD or STANDARD OIL service stations of defendant. In addition, defendant introduced into evidence all or portions of the testimony of another 127 persons from the five-state area who had testified substantially to the same effect previously either at the hearing on defendant's motion for a preliminary injunction or on depositions taken by defendant during its discovery before trial. There is no evidence whatsoever to indicate how many prospective witnesses were interviewed and rejected by defendant before this small number was selected out of the millions of consumers of petroleum products in the five-state area.

Under such circumstances, on the question of likelihood of confusion, the testimony of these witnesses is of little probative value.

37. Plaintiff produced at the trial 48 witnesses from the five-state area who testified in substance that there was no confusion in their minds between plaintiff and its HUMBLE service stations and ESSO products on the one hand and defendant and its STANDARD or STANDARD OIL service stations and products on the other. Plaintiff also introduced into evidence all or portions of the testimony of another 12 persons from the five-state area who had testified substantially to the same effect previously at the hearing on defendant's motion for a preliminary injunction and the written statement of another person from the five-state area substantially to the same effect, in respect of which written statement plaintiff and defendant had agreed previously at the said hearing that the author thereof, if called as a witness by plaintiff, would testify according to such statement. In addition, plaintiff and defendant stipulated in open court that another 286 persons from the five-state area, whose names, addresses and occupations were submitted, if called as witnesses by plaintiff, would testify to the same effect. The testimony of these witnesses, while not entitled to, nor has it been given much weight, yet it has been considered along with all the evidence.

38. A considerable part of the confusion testified to by defendant's witnesses was the result of thoughtless errors on the part of careless or inattentive purchasers. If such purchasers were confused by plaintiff's service stations, it was only because of their refusal or neglect to read the words HUMBLE and ESSO which were plainly before them.

39. Other evidence relied upon by defendant to establish likelihood of confusion, such as the testimony of its retail salesmen and bulk agents relating to misdirected telephone calls, misdelivered ESSO signs and misdelivered merchandise, and documentary evidence such as misdirected mail, checks and the like, consisted almost entirely of hearsay, and was, therefore, carefully scrutinized by the Court. Since plaintiff did not have any opportunity to cross-examine the persons who made the said telephone calls, or delivered the said ESSO signs or merchandise, or sent the said mail, for the purpose of ascertaining the reasons which prompted the misdirection or misdelivery of the same, such evidence has been accorded very little weight in determining the likelihood of confusion, and the Court does not find such evidence to be persuasive on this issue.

40. The Court has analyzed the documentary evidence, such as misdirected mail, checks and the like, claimed by defendant to demonstrate confusion and the likelihood thereof, and finds that the members of the purchasing public, who defendant claims are shown by the said documentary evidence to be confused, either were not confused, or were misled by the factors which have been set forth under Paragraph 35 above, or were the victims of their own carelessness, inattention or indifference, or were not from within the relevant five-state area. Any confusion claimed by defendant to be demonstrated by the said documentary evidence which does not fall within one or more of these three categories is so insubstantial that it does not justify a finding that likelihood of confusion on the part of the public has been established.

41. In the early part of 1947, prior to the effective date of the Trademark Act of 1946, otherwise known as the Lanham Act, a meeting was held in Chicago, Illinois, in the Board Room of the Standard Oil Company of Indiana, at the request of Mr. Buhl Jones, who was then general counsel for that company. The meeting was attended by representatives of plaintiff and defendant and defendant's present parent company, Standard Oil Company of California, and of Socony Vacuum Oil Company, Standard Oil Company of Ohio and Standard Oil Company of Indiana, and lasted approximately three hours. At the meeting a discussion was had concerning the Lanham Act, the

meaning of the concurrent registration provisions thereof, the necessity of registering marks under the Lanham Act, and other matters relating to the Lanham Act, and a list was read of names, including the name STANDARD, which had a common origin in the pre-1911 Standard Oil Company. The representative of the Socony Company referred to its registration of the word STANDARD and plaintiff's representative referred to plaintiff's registration of the word STANDARD, and neither defendant's representative nor the representative of its present parent company, nor anyone else at the meeting, made any reference whatsoever relating to the cancellation of any registrations or as to what should be done in the future. With respect to the existing registrations of the companies represented at the meeting, the consensus of opinion of those present was that nothing was to be done at that time, and that the said registrations should be continued as they were.

42. The evidence is insufficient to sustain a finding that it has been and is the custom and practice among the various non-affiliated "Standard Oil" companies for each "Standard Oil" company to confine its direct use of STANDARD, STANDARD OIL or STANDARD OIL COMPANY, or of any so-called abbreviations or derivations thereof, within its own marketing area, and to refrain from using any such STANDARD name or trademark, or any so-called abbreviations or derivations thereof, in the marketing area of another "Standard Oil" company, except through such other "Standard Oil" company. On the contrary, there is substantial evidence in the record which refutes the existence of any such custom or practice among the various non-affiliated "Standard Oil" companies:

(A) The Socony Vacuum Oil Company (now known as Socony Mobil Company) and its predecessor, the Standard Oil Company of New York, used the word STANDARD in the New England area in connection with the sale of petroleum products from sometime well prior to 1931 until about 1948. The word STANDARD was used on all service stations from some time well prior to 1931 until some time after 1940 by the said company and its predecessor, and its use was continued from some time after 1940 until about 1948 on fuel oil and other petroleum products. During the same period, i. e., from about 1931 until 1948, the Colonial Beacon Oil Company, a predecessor of plaintiff, was using the word ESSO on service station identification signs in the same territory. The Socony Vacuum Oil Company never received any complaints from anyone concerning the use of the word ESSO by the Colonial Beacon Oil Company and never objected to the said use by or brought suit against the Colonial Beacon Oil Company for trademark infringement.

(B) Starting in approximately 1950, and possibly a year or two earlier, and continuing for a period of about six or seven years, the California Oil Company, an affiliate or subsidiary of defendant's parent company, the Standard Oil Company, of California used the word CALSO on the identification signs of its service stations and in connection with the advertising and sale of petroleum products in the northeastern United States, where plaintiff had been and was using ESSO in the advertising and sale of its products and STANDARD in its corporate name and otherwise; and plaintiff informed the Standard Oil Company of California that it had no objection to such use of the word CALSO by the California Oil Company in the said area.

(C) The Standard Oil Company of Indiana and the Standard Oil Company of California entered into an agreement, dated November 16, 1955, under which either of them was free, among other things, to use "a Standard name" in advertisements disseminated outside of its own marketing area, through consumer advertising media such as magazines, radio and television, provided only that at least 85 per cent of the audience reached thereby was located within its own marketing area.

43. The rights and obligations of the parties litigant are governed by the three contracts and by the legal consequences of the distributor relationship which has long existed between them. Therefore, the confusion testified to by defendant's witnesses or claimed by defendant to be demonstrated by documentary evidence such as misdirected mail, checks and the like, or the likelihood thereof, is immaterial and irrelevant. However, even if the confusion testified to by defendant's witnesses or claimed by defendant to be demonstrated by such documentary evidence, or the likelihood thereof, were to be considered material and relevant, such evidence does not establish a sufficient likelihood of confusion to enable defendant to prevail on its counterclaim.

44. Any confusion testified to by defendant's witnesses, or claimed by defendant to be demonstrated by such documentary evidence, which resulted from the exercise by plaintiff and defendant of their respective legal rights under the three contracts, cannot be complained of by defendant. Any such confusion, even if genuine, was a direct result of contracts which were fully intended and entered into in good faith by both parties, with full knowledge of the trade and of the market practices prevailing therein, and defendant must accept and cannot now seek to be relieved of the consequences of such contracts.

45. Any confusion testified to by defendant's witnesses, or claimed by defendant to be demonstrated by such documentary evidence, which resulted from the lawful distributor relationship which has long existed between plaintiff and defendant, and from the fact that some members of the purchasing public, because of the said lawful distributor relationship, have continued to associate ESSO petroleum products with defendant, cannot be complained of by defendant. Any such confusion, even if genuine, was a consequence of the said lawful distributor relationship and was not occasioned by any wrongful conduct on the part of plaintiff.

46. Defendant was under a duty to make known to the public the eventual termination of the distributor relationship existing between it and plaintiff and avoid any possibility that some confusion may arise from the fact that it and plaintiff are now in competition with each other. Since defendant has done nothing effective in this regard, it would be unjust and inequitable to permit defendant to benefit from any confusion testified to by defendant's witnesses, or claimed by defendant to be demonstrated by such documentary evidence, which resulted from defendant's breach of its affirmative duty to take steps to avoid it, even if any such confusion be genuine.

47. Any confusion testified to by defendant's witnesses, or claimed by defendant to be demonstrated by such documentary evidence, which resulted from the fact that the credit cards of each party were and are honored at the other party's service stations, pursuant to a reciprocal arrangement, cannot be complained of by defendant, since any such confusion, even if genuine, was a consequence of a legitimate business practice to which defendant was a party.

48. Any confusion testified to by defendant's witnesses, or claimed by defendant to be demonstrated by such documentary evidence, which was the result of thoughtless errors by careless or inattentive purchasers, even if genuine, does not establish likelihood of confusion. The fact that the carelessness or indifference of such purchasers resulted in their obtaining a product or service which was different from what they desired is no proof of confusion or the likelihood thereof.

49. The sale, offering for sale or advertising by plaintiff of petroleum products of any and every kind under its trademark ESSO or any of its other trademarks which include ESSO in the five-state area directly and not through defendant does not constitute infringement of any of defendant's names, trademarks or service marks, or of any so-

called abbreviations or derivations thereof, or of any other rights of defendant.

50. The sale, offering for sale or advertising by plaintiff of petroleum products of any and every kind under its trademark ESSO or any of its other trademarks which include ESSO in the five-state area directly and not through defendant does not constitute unfair competition with defendant.

51. Plaintiff is not estopped from denying that its trademark ESSO or other trademarks which include ESSO is not or are not equivalent or equivalents of STANDARD, STANDARD OIL or STANDARD OIL COMPANY, or of any so-called abbreviations or derivations thereof, in the five-state area.

52. The trade dress, color scheme and general appearance of plaintiff's service stations in the five-state area and of plaintiff's products sold at such service stations, either alone or in combination with plaintiff's use of ESSO at such service stations, do not simulate the trade dress, color scheme and general appearance of defendant's service stations and products in the said area, and do not constitute unfair competition with defendant.

53. The sale, offering for sale or advertising by plaintiff of petroleum products of any and every kind bearing the trademark ESSO or other trademarks which include ESSO in the five-state area directly and not through defendant does not constitute unclean hands on the part of plaintiff.

54. Even if the accompanying language concerning the honoring of credit cards or the selling of motor oil be truthful, the use by defendant's dealers of plaintiff's trademark ESSO on such signs erected at their STANDARD or STANDARD OIL service stations cannot be sanctioned, since it is clear from the manner and circumstances of the use of ESSO on such signs that the intent of such signs is to trade upon plaintiff's good will in the word ESSO and deceive purchasers into believing that defendant's dealer STANDARD or STANDARD OIL service stations are plaintiff's or are sponsored by plaintiff or are connected in some way in trade with plaintiff.

An order may be drawn by attorneys for plaintiff in accord herewith and copies forwarded to opposing counsel for objections as to form, if any.